# TOWN OF GROTON *v.* UNITED STEELWORKERS OF AMERICA
## (SC 16164)

McDonald, C. J., and Borden, Norcott, Katz, Palmer, Sullivan and Vertefeuille, Js.

*(One justice concurring separately; three justices dissenting in one dissenting opinion)*

Argued November 4, 1999—officially released August 8, 2000

*Thomas W. Meiklejohn*, for the appellant (defendant).

*Susan M. Phillips*, with whom was *Harry E. Calmar*, for the appellee (plaintiff).

*Opinion*

BORDEN, J. The dispositive issue in this appeal is whether an arbitral award, which reinstated to employment an employee who had been convicted of embezzlement of his employer's funds following a plea of nolo contendere, violates public policy. The defendant union, United Steelworkers of America, appeals[1] from the judgment of the trial court in favor of the plaintiff, the town of Groton, vacating on public policy grounds an arbitration award that had reinstated the employment of David Warren, whom the plaintiff had discharged following his conviction of embezzlement based upon his plea of nolo contendere. The defendant claims that the trial court improperly applied the "public policy" exception to the general rule of deference to

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). Initially, a majority of a five member panel of this court consisting of Chief Justice McDonald and Justices Borden, Norcott, Katz and Peters reversed the judgment of the trial court. *Groton* v. *United Steelworkers of America*, 252 Conn. 508, 747 A.2d 1045 (2000). Justice Peters subsequently reached her seventieth birthday on March 21, 2000, and is no longer a member of this court. On April 28, 2000, the court granted the plaintiff's motion for reconsideration en banc. Thereafter, Justices Palmer, Sullivan and Vertefeuille were added to the panel. They subsequently reviewed the record, briefs and transcript of the original oral argument before this court and participated in the resolution of this case. This opinion supersedes our prior decision; id.; in all respects.

arbitration awards. We disagree and, accordingly, we affirm the trial court's judgment.[2]

Pursuant to an unrestricted submission, the arbitrator ruled that Warren had been discharged from his employment without just cause in violation of the governing collective bargaining agreement, and ordered him reinstated with limited back pay. The plaintiff filed an application in the trial court to vacate the award, and the defendant filed a cross application to confirm the award. The trial court determined that the award was in violation of public policy, and rendered judgment granting the plaintiff's application to vacate and denying the defendant's application to confirm. This appeal followed.

The facts and procedural history, as disclosed by the detailed award of the arbitrator, are undisputed. Warren was employed by the plaintiff as a weighmaster at the town landfill until April 14, 1997, when he was discharged. His duties included selling daily landfill permits to town residents, who would pay him for the permits. He was responsible for accounting for the permits that he sold and turning the money received over to the plaintiff.

On November 20, 1996, Warren was charged by the Groton police with two counts of larceny by embezzlement in the sixth degree in violation of General Statutes § 53a-119 (1),[3] and General Statutes

---

[2] This conclusion renders it unnecessary to consider the plaintiff's alternate ground for affirmance of the judgment, namely, that the award was rendered in manifest disregard of law.

[3] General Statutes § 53a-119 provides in relevant part: "Larceny defined. A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to:

"(1) Embezzlement. A person commits embezzlement when he wrongfully appropriates to himself or to another property of another in his care or custody. . . ."

§ 53a-125b,[4] and one count of violating a Groton town ordinance. These charges arose out of allegations that Warren had taken money for permits and kept it for himself, rather than turning it in to the plaintiff. On November 22, 1996, the police notified Warren's supervisor of his arrest and, in response, the supervisor transferred Warren temporarily to the highway division and notified him that "[o]nce court action is final, we will review its findings and take any disciplinary action, as appropriate, which may include action up to and including employment termination."

On December 4, 1996, Warren's criminal defense attorney and the state's attorney reached a plea bargain pursuant to which the state would drop one of the larceny counts and the municipal ordinance count, Warren would plead nolo contendere to the remaining larceny count, and the state would recommend a fine of $85 plus $15 in court costs. Warren agreed to this plea bargain because contesting the charges at trial would cost him $5000 in legal fees, representing a significant percentage of his gross annual salary of approximately $35,000 and a larger percentage of his net annual salary. Warren thereupon entered a plea of nolo contendere to the larceny count, and the trial court rendered a judgment of conviction thereon and sentenced him according to the plea bargain.

The next day, Warren's supervisor contacted the clerk of the court and learned of Warren's conviction. There then ensued a lengthy series of meetings among the supervisor, Warren and his union representative. Ultimately, on April 14, 1997, the plaintiff terminated Warren's employment.

---

[4] General Statutes § 53a-125b provides: "Larceny in the sixth degree: Class C misdemeanor. (a) A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is two hundred fifty dollars or less.

"(b) Larceny in the sixth degree is a class C misdemeanor."

The defendant filed a grievance on Warren's behalf challenging the termination. Upon the plaintiff's denial of the grievance, it was submitted to arbitration pursuant to the collective bargaining agreement between the plaintiff and the defendant. The collective bargaining agreement provided in relevant part: "All discharges, demotions, and/or suspensions will be for just cause only . . . ." The plaintiff's personnel rules provided for possible disciplinary action for "employee misconduct," two examples of which provided as follows: "(a) Conviction of a felony or misdemeanor arising out of the performance of duty or within the scope of employment which may affect the performance of duty"; and "(h) Misappropriation, destruction, theft or conversion of municipal property or equipment."[5] Because the parties

---

[5] Rule 10 of the plaintiff's personnel rules provides: "EMPLOYEE DIS-CIPLINE

"SCOPE: This rule governs the imposition of disciplinary action for employee misconduct. Section 1 contains examples of employee misconduct, while Section 2 contains procedures governing the imposition of disciplinary action.

"Section 1. EXAMPLES OF EMPLOYEE MISCONDUCT

"The following are examples of employee conduct for which disciplinary action may be instituted. This list is not all inclusive and disciplinary action may be imposed for other forms of employee conduct which are detrimental to the Town of Groton:

"(a) Conviction of a felony or misdemeanor arising out of the performance of duty or within the scope of employment which may affect the performance of duty.

"(b) Non-performance of job duties or job performance below the established requirements of the position.

"(c) Absence without leave.

"(d) Disobedience of orders from a superior or other acts of insubordination or disrespect.

"(e) Negligence resulting in damage to municipal property or equipment or constituting a threat to the safety of the employee or fellow employees.

"(f) Violation of established rules and procedures governing employee behavior or conduct.

"(g) Habitual tardiness and/or absenteeism; the abuse of sick or annual leave.

"(h) Misappropriation, destruction, theft or conversion of municipal property or equipment.

were unable to agree on how to state the issues submitted to the arbitrator, he framed the relevant issue[6] as follows: "Whether the [plaintiff] had just cause under Article XVIII of the collective bargaining agreement in terminating David Warren for the following reasons: (1) his conviction of a crime arising out of his employment . . . . If not, what shall the remedy be?"[7] The plaintiff

"(i) Falsification of information on an application for employment, insurance records or other employee records maintained by the Town.

"(j) Failure to properly report accidents or personal injuries.

"(k) Use, consumption or being under the influence of intoxicating liquors, narcotics, or other controlled substances while using municipal equipment or during working hours. The use of prescription drugs which may impair employee actions so as to be dangerous to the employee or other fellow employees or cause said employee to be unable to perform the duties and responsibilities of his/her position.

"(l) Unauthorized disclosure of confidential employee records or information.

"(m) Harassment of other employees.

"Section 2. IMPOSITION OF DISCIPLINARY ACTION

"(A) Authority to Impose Disciplinary Action

"Disciplinary action for employee misconduct may be initiated or recommended by employees having supervisory responsibilities over the person involved. However, only Department Heads or appointing authorities may impose disciplinary action involving suspension, demotion or discharge.

"(B) Forms of Corrective Action

"The forms of corrective action which may be imposed are listed in progressive order of severity as follows:

"(1) Oral reprimand (warning)

"(2) Written reprimand

"(3) Temporary reduction in pay

"(4) Suspension

"(5) Demotion

"(6) Discharge

"Corrective action shall be, whenever possible, of an increasingly progressive nature in accordance with the above paragraph. The supervisor or appointing authority, however, retains the right to skip steps depending on the severity of the offense or upon the past work record of the employee involved."

[6] A second issue, involving whether the plaintiff improperly had denied Warren credit for certain unused personal and vacation days he had accumulated prior to his termination, is not involved in this appeal.

[7] The plaintiff also claimed that, and the arbitrator considered whether, Warren had been insubordinate during one of the various meetings by refusing to answer questions about his conduct regarding the allegedly mishan-

relied exclusively on subsection (a) of § 1 of personnel rule 10, namely, the fact of Warren's conviction of larceny in the sixth degree by embezzlement following charges that he had stolen funds that he was obligated to turn in to the plaintiff. The plaintiff, however, did not rely on subsection (h) of § 1 of personnel rule 10. In other words, the plaintiff did not seek to establish by independent evidence that Warren had *in fact* engaged in the larcenous conduct.

The arbitrator determined that, under the circumstances of the case, the fact of the conviction did not establish just cause for Warren's termination. The arbitrator first noted his agreement with the proposition that "[i]f Warren in fact sold daily landfill permits and intentionally pocketed the money instead of turning it over to the [plaintiff], there would be just cause to discharge Warren from his employment. Discharge would be justified even if Warren had done so on only a single occasion. Any theft of [t]own funds for which an employee is responsible constitutes such an egregious breach of trust that summary discharge clearly would be justified. There would be no need or requirement to apply principles of progressive discipline."

The arbitrator noted, however, that the plaintiff had relied, not on any independent proof that Warren had

dled funds in violation of a different subsection of the personnel rules. According to the arbitrator, Warren had not answered those questions because of confusion on the part of both the plaintiff and the defendant over the appropriate warnings required to have been given to Warren. Consequently, the arbitrator exonerated Warren of the insubordination charge.

Although the plaintiff did not raise this issue in its application to vacate, the trial court addressed it. Moreover, although the court appeared to endorse the plaintiff's position on this issue, the court rested its decision to vacate the award, not on this basis, but on the basis of the conviction. The defendant claims on appeal that the trial court improperly addressed this issue because it was not within the scope of the pleadings. We need not address this claim, however, because we do not read the trial court's decision as resting on this ground, and the plaintiff has not renewed on appeal *its* claim on this issue as an alternate ground on which to affirm the trial court's judgment.

in fact stolen such funds, but solely on the fact of conviction under the circumstances disclosed by the record. Those circumstances were that Warren had neither pleaded guilty to the crime charged nor been found guilty after a trial. Instead, he had been convicted after a plea of nolo contendere pursuant to the plea bargain.

The arbitrator then turned to the legal effect of a plea of nolo contendere. In this regard, the arbitrator read this court's decision in *Lawrence* v. *Kozlowski*, 171 Conn. 705, 711–12 n.4, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977), to hold that neither a plea of nolo contendere, nor a conviction based upon such a plea, can be used in a subsequent proceeding to establish (1) an admission of guilt, or (2) a res judicata effect regarding guilt. The arbitrator also noted this court's statements in *Lawrence* v. *Kozlowski*, supra, 711–12 n.4, citing C. McCormick, Evidence (2d Ed. 1972) § 265, p. 633, that pleas of nolo contendere may be entered for reasons of convenience and without much regard to guilt and collateral consequences, and are often entered with the expectation that they will not be used against the accused in subsequent proceedings. Thus, the arbitrator, quoting from *Lawrence* v. *Kozlowski*, supra, 711–12 n.4, concluded that, although such a plea might be regarded as a tacit admission of guilt, because of their inconclusive and ambiguous nature, the plea and conviction " 'should be given no currency beyond the particular case in which it was entered.' "

Applying these principles to the facts before him, the arbitrator noted that Warren had entered his plea with the expectation that it would not be used against him in subsequent proceedings. The arbitrator also noted that Warren had compelling reasons of convenience to enter such a plea, namely, the significant portion of his gross and net annual income that it would have cost him to go to trial, balanced against the modest fine and

the advice of his attorney that he was not admitting any guilt. On the basis of these reasons, the arbitrator concluded that Warren's conviction of a crime arising out of his employment did not constitute just cause to terminate him under the collective bargaining agreement.

The plaintiff applied to the trial court to vacate the award, and the defendant cross applied to confirm the award. In its application to vacate, the plaintiff claimed that the award violated clear public policy.[8] The trial court determined that the arbitrator's award violated public policy. Accordingly, the court rendered judgment vacating the award.

The defendant claims that the trial court misapplied the public policy exception to the general rule of deference to an arbitrator's award made pursuant to an unrestricted submission.[9] The defendant argues that, because Warren's conviction was based on a plea of nolo contendere, the conviction: (1) cannot be used to establish that he in fact embezzled town funds; and (2) cannot be given any other legal effect. Thus, the defendant contends that "[t]here is no conflict with public policy unless the award approves some conduct which offends public policy. The award cannot be read to approve of theft unless [Warren] is *actually guilty of theft*. There has been no finding of guilt which can be relied upon in this proceeding. Therefore, the award does not conflict with public policy." (Emphasis in original.) We disagree.

The well established general rule is that "[w]hen the parties agree to arbitration and establish the authority

---

[8] The plaintiff also claimed that the award was in manifest disregard of the law. In light of its conclusion that the award violated public policy, the trial court did not address that claim. It is unnecessary for us to reach that claim as well. See footnote 7 of this opinion.

[9] Both parties agree that the submission to the arbitrator was unrestricted.

of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 185, 530 A.2d 171 (1987). When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. *Hartford* v. *Board of Mediation & Arbitration*, 211 Conn. 7, 14, 557 A.2d 1236 (1989); *New Haven* v. *AFSCME, Council 15, Local 530*, 208 Conn. 411, 415–16, 544 A.2d 186 (1988). Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." *Garrity* v. *McCaskey*, 223 Conn. 1, 4–5, 612 A.2d 742 (1992). Furthermore, in applying this general rule of deference to an arbitrator's award, "[e]very reasonable presumption and intendment will be made in favor of the [arbitral] award and of the arbitrators' acts and proceedings." (Internal quotation marks omitted.) *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, 237 Conn. 114, 119, 676 A.2d 825 (1996).

In *Garrity* v. *McCaskey*, supra, 223 Conn. 6, however, we also recognized two narrow common-law bases, as opposed to statutory bases under General Statutes § 52-418,[10] for vacating an award rendered pursuant to an

---

[10] General Statutes § 52-418 provides: "Vacating award. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so

unrestricted submission: (1) the award rules on the constitutionality of a statute; and (2) the award violates clear public policy. Only the second ground is involved in the present case.

We recently held that, when a challenge to a voluntary arbitration award rendered pursuant to an unrestricted submission raises a legitimate and colorable claim of violation of public policy, the question of whether the award violates public policy requires de novo judicial review. *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, 252 Conn. 416, 429, 747 A.2d 1017 (2000). This challenge raises such a claim. We therefore undertake de novo review of the award.

"The public policy exception applies only when the award is clearly illegal or clearly violative of a strong public policy." *Garrity* v. *McCaskey*, supra, 223 Conn. 7. A challenge that an award is in contravention of public policy "is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. *Stamford* v. *Stamford Police Assn.*, [14 Conn. App. 257, 259,

imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(b) If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators. Notwithstanding the time within which the award is required to be rendered, if an award issued pursuant to a grievance taken under a collective bargaining agreement is vacated the court or judge shall direct a rehearing unless either party affirmatively pleads and the court or judge determines that there is no issue in dispute.

"(c) Any party filing an application pursuant to subsection (a) of this section concerning an arbitration award issued by the State Board of Mediation and Arbitration shall notify said board and the Attorney General, in writing, of such filing within five days of the date of filing."

In *Garrity* v. *McCaskey*, supra, 223 Conn. 10, we also recognized that § 52-418 (a) (4) includes the instance in which "an award that manifests an egregious or patently irrational application of the law . . . ."

540 A.2d 400 (1988)]; *Board of Trustees* v. *Federation of Technical College Teachers,* [179 Conn. 184, 195, 425 A.2d 1247 (1979)]. When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award. *Board of Trustees* v. *Federation of Technical College Teachers,* supra [195]. Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. [*United Paperworkers International Union, AFL-CIO* v. *Misco, Inc.,* 484 U.S. 29, 43, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987)]; see *W. R. Grace & Co.* v. *Rubber Workers,* 461 U.S. 757, 766, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983) . . . . *New Haven* v. *AFSCME, Council 15, Local 530,* supra, [208 Conn.] 417. The party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated. Id. Therefore, given the narrow scope of the public policy limitation on arbitral authority, the plaintiff can prevail in the present case only if it demonstrates that the [arbitrator's] award clearly violates an established public policy mandate." (Internal quotation marks omitted.) *Watertown Police Union Local 541* v. *Watertown,* 210 Conn. 333, 339–40, 555 A.2d 406 (1989). Applying the appropriate scope of review, we conclude that, based upon the undisputed facts of the present case, the award violated the clear public policy against embezzlement, and that this policy encompasses the policy that an employer may not be required to reinstate the employment of one who has been convicted of embezzlement

of his employer's funds, whether that conviction follows a trial, a guilty plea, or a plea of nolo contendere.

We agree with the arbitrator, and the defendant does not dispute, that if Warren's conviction for embezzlement of his employer's funds had followed either a guilty plea or a trial, the employer would have been justified in imposing appropriate discipline, including termination, and an arbitral award requiring his reinstatement to employment would have violated clear public policy.[11] See, e.g., *Board of Education* v. *Local 566, Council 4, AFSCME*, 43 Conn. App. 499, 500–501, 683 A.2d 1036 (1996), cert. denied, 239 Conn. 957, 688 A.2d 327 (1997) (where grievant had pleaded guilty to and been convicted of fraudulently diverting union funds, award reinstating him to job with responsibility for publicly owned property violated public policy); see also *State* v. *Council 4, AFSCME*, 27 Conn. App. 635, 641, 608 A.2d 718 (1992) (where grievant admittedly had misused state funds by cashing falsely generated public assistance checks, award of reinstatement to employment violated public policy). In either instance, the record would be sufficient to establish that the employee had in fact stolen from his employer. The guilty plea would constitute an admission of guilt; see *Lawrence* v. *Kozlowski*, supra, 171 Conn. 711 n.4; and the conviction after trial would be sufficient to establish the fact of the theft, under established principles of

---

[11] We emphasize that we do not hold that, in imposing discipline on an employee who has been established to have embezzled his employer's funds, the employer is required by law to terminate the employee. The degree of discipline that the employer imposes is, in the first instance, within the discretion of the employer, subject to those standards set forth in the applicable personnel rules, collective bargaining agreement, and any other relevant materials. Indeed, in *Board of Education* v. *Local 566, Council 4, AFSCME*, 43 Conn. App. 499, 501, 683 A.2d 1036 (1996), cert. denied, 239 Conn. 957, 688 A.2d 327 (1997), in which the employee had pleaded guilty to stealing union funds, the discipline imposed was not termination but demotion to a lesser position. The arbitral award that was held to violate public policy was to reinstate him to his prior position. Id., 504.

issue preclusion. See *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 296–307, 596 A.2d 414 (1991). In either of those instances, the public policy against theft also would include the policy that an employer should not be required to retain in a position of financial trust an employee who has been established to have stolen.

The question posed by this appeal is whether that calculus is altered by the fact that the conviction is based, not upon a plea of guilty or a trial, but upon a plea of nolo contendere. We conclude that an arbitral award that requires the employer to reinstate an employee who has been terminated following his conviction, upon the basis of such a plea, of embezzling the employer's funds, violates public policy.

We agree with the plaintiff that the public policy against embezzlement encompasses the policy that an employer should not be compelled to reinstate an employee who has been convicted of embezzling the employer's funds, irrespective of whether the conviction followed a trial, a guilty plea or a nolo contendere plea.[12] The employment context ordinarily involves a number of legitimate expectations on the part of the employer that such a conviction is likely to undermine, irrespective of the legal underpinning of the conviction. For example, the employer is entitled to expect that he be able to trust an employee who is in a position of financial responsibility. The employer is also entitled to expect that his other employees will be able to trust their coemployees, and that those other employees will

[12] We acknowledge that there may be circumstances attending such a plea that are so extreme that a conviction based upon it should be given no credence whatsoever for purposes of an employment discipline decision. Suffice it to say that, although in the present case the circumstances attending Warren's plea generate understanding of his dilemma in deciding whether to plead nolo contendere or go to trial, they are not so extreme as to require that his conviction be wholly disregarded in the subsequent employment discipline decision.

feel sufficiently deterred from engaging in embezzle-
ment. Finally, the employer is entitled to expect that
members of the public who are required to deal with
his employees will feel that they are being served in an
honest and trustworthy manner. All of these legitimate
expectations are severely threatened by a requirement
that the employer reinstate an employee who has been
convicted of embezzling the employer's funds. That
severe threat, moreover, is not removed or significantly
ameliorated by the fact that the conviction rests upon
a plea of nolo contendere, as opposed to a plea of guilty
or a trial.

Although we have stated in the context of litigation
and administrative rulings that a prior conviction based
upon a nolo contendere plea may have no currency
beyond the case in which it was rendered; *Lawrence*
v. *Kozlowski*, supra, 171 Conn. 711–12 n.4; such a con-
viction does have the weight of a final adjudication of
guilt and does share at least some characteristics of a
guilty plea. "A plea of nolo contendere has the same
legal effect as a plea of guilty on all further proceedings
within the indictment. *North Carolina* v. *Alford*, 400
U.S. 25, 35–36 n.8, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970);
*Lawrence* v. *Kozlowski*, [supra, 705]; see *State* v. *Godek*,
182 Conn. 353, 363–64, 438 A.2d 114 (1980), cert. denied,
450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981).
The only practical difference is that the plea of nolo
contendere may not be used against the defendant as
an admission in a subsequent criminal or civil case. 4
Wigmore, Evidence (Chadbourn Rev. 1972) § 1066 (2),
p. 81; Lenvin & Meyers, 'Nolo Contendere: Its Nature
and Implications,' 51 Yale L.J. 1255 (1942). *State* v. *Mar-
tin*, 197 Conn. 17, 20–21 n.7, 495 A.2d 1028 (1985). It is
clear, however, that a nolo contendere plea also consti-
tutes a waiver of all nonjurisdictional defects in a man-
ner equivalent to a guilty plea. *Lott* v. *United States*,
367 U.S. 421, 81 S. Ct. 1563, 6 L. Ed. 2d 940 (1961);

*United States* v. *DePoli,* 628 F.2d 779, 781 (2d Cir. 1980)." (Internal quotation marks omitted.) *State* v. *Madera,* 198 Conn. 92, 97 n.5, 503 A.2d 136 (1985). Thus, it is simply too much to expect of the employer that it be required to set aside its legitimate expectations, solely because of the differences, which the law recognizes in contexts other than that of employment, between a conviction based upon a guilty plea or trial and a conviction based upon a nolo contendere plea.

*Lawrence* v. *Kozlowski,* supra, 171 Conn. 705, upon which the defendant relies, does not require a different conclusion. In *Lawrence,* the plaintiff challenged, by way of an appeal under the Uniform Administrative Procedure Act, the suspension of his driver's license by the defendant commissioner, who had admitted into evidence at the administrative hearing a certified record of the plaintiff's prior plea of nolo contendere to and ensuing conviction of negligent homicide. Id., 710. In concluding that the commissioner should not have admitted that record, we reiterated that "in a judicial proceeding the plaintiff's nolo contendere plea and arrest would be inadmissible. Furthermore, despite the broad latitude given the commissioner with respect to the admission of evidence, we are also of the opinion that the nolo contendere plea should have been excluded from the administrative hearing as well, not only because it was of marginal probative value, but also because such pleas are often entered with the expectation that they will not be used against an accused in subsequent proceedings. See McCormick, [supra] § 265." *Lawrence* v. *Kozlowski,* supra, 711–12. In an explanatory footnote regarding the differences between a guilty plea and a nolo contendere plea, with respect to the latter, we stated: "Nor is it admissible . . . as res judicata establishing that the plaintiff was engaged in a criminal act." Id., 711 n.4. For this proposition, we cited *Krowka* v. *Colt Patent Fire Arm Mfg.*

*Co.*, 125 Conn. 705, 714, 8 A.2d 5 (1939), in which, in the context of an action for damages, we had held that the record of a prior police court conviction of the plaintiff for breach of peace, based upon a nolo contendere plea, "was not admissible as res judicata."

As these authorities state, under our law a prior plea of nolo contendere and a conviction based thereon may not be admitted into evidence in a subsequent civil action or administrative proceeding to establish either an admission of guilt or the fact of criminal conduct.[13] Civil actions and administrative proceedings, however, ordinarily do not involve the kind of legitimate expectations of the employer that are inherent in the employment context and that would be severely undermined by requiring the reinstatement of an employee convicted of embezzling his employer's funds. The absence of these considerations in the ordinary civil or administrative context, and the compelling nature of their presence in the employment context, differentiate these authorities from the present case.

This differentiation, moreover, is premised on the notion that, because arbitration is essentially a private ordering scheme for resolving disputes, those authorities should not be extended to that private scheme. Voluntary arbitration is a method by which parties freely determine that their disputes will be resolved, at least in the first instance, not by public officials such as judges or administrators, but by arbitrators. Our legal

---

[13] As the plaintiff suggests, however, this is not the universally held view. See, e.g., *Sokoloff* v. *Saxbe*, 501 F.2d 571, 574–75 (2d Cir. 1974), in which the court sustained the revocation of a physician's license pursuant to a federal statute providing for such revocation upon the conviction of a drug-related felony, where the physician had been convicted of such a felony upon the basis of his nolo contendere plea. The court stated that "[w]here . . . a statute (or judicial rule) attaches legal consequences to the fact of a conviction, the majority of courts have held that there is no valid distinction between a conviction upon a plea of nolo contendere and a conviction after a guilty plea or trial." Id., 574.

system encourages that determination by ordinarily giving great deference to the initial decision to arbitrate; *State* v. *AFSCME, Council 4, Local 387, AFL-CIO*, 252 Conn. 467, 473, 747 A.2d 480 (2000); and to both the factual and legal determinations of the arbitrators. *Garrity* v. *McCaskey*, supra, 223 Conn. 7. Indeed, the arbitral process only becomes part of the public process of civil litigation if either party seeks judicial review of the arbitrator's decision, and even then it is the exception, as in the present case, rather than the rule, that the scope of review of that decision requires a de novo determination by the court; and even in the present case, we give deference to the arbitrator's factual determinations.

Therefore, although our jurisprudence traditionally has imposed limitations on the collateral effects to be given, in the civil and administrative litigation contexts, to a conviction based on a nolo plea, the private nature of voluntary arbitration strongly counsels against extending those limitations to the employment sphere governed by a voluntary arbitration clause. Put another way, our law is willing, for reasons of policy, to endorse the notion that a conviction based on a nolo plea is somehow different from and less than a criminal conviction based on a trial or guilty plea, to the extent that it may not be used for all purposes for which such convictions may be used in other public legal proceedings, such as civil trials and administrative proceedings. That does not mean, however, that the same notion must or should be extended to the private realm of arbitration governing employment. In that realm, a conviction based on a plea of nolo contendere does not, in our view, necessarily carry the same set of limitations with it. Thus, it may be viewed, as in the present case, as a conviction for embezzlement of the employer's funds.

The judgment is affirmed.

In this opinion MCDONALD, C. J., and SULLIVAN and VERTEFEUILLE, Js., concurred.

MCDONALD, C. J., concurring. I agree with the majority opinion. I only wish to add that I do so as well for the reasons set forth in my dissent in *Groton* v. *United Steelworkers of America*, 252 Conn. 508, 526–27, 747 A.2d 1045 (2000).

KATZ, J., with whom NORCOTT and PALMER, Js., joined, dissenting. I agree that, when a challenge to a voluntary arbitration award rendered pursuant to an unrestricted submission raises a legitimate and colorable public policy claim, the question of whether the award violates public policy requires de novo judicial review; see *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, 252 Conn. 416, 429, 747 A.2d 1017 (2000); and that because the challenge in the present case raises such a claim, we should undertake de novo review of the award. I also agree that "the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." (Internal quotation marks omitted.) *Watertown Police Union Local 541* v. *Watertown*, 210 Conn. 333, 340, 555 A.2d 406 (1989). Applying the appropriate scope of review, I would conclude, however, that, based upon the undisputed facts of the present case, the award did *not* violate the clear public policy against embezzlement because it was premised *solely* upon a conviction that followed a plea of nolo contendere.

The employment context ordinarily involves a number of legitimate expectations on the part of the

employer that a conviction of embezzlement is likely to undermine. Therefore, as the majority states in its opinion, "if [David] Warren's conviction for embezzlement of his employer's funds had followed either a guilty plea or a trial, the employer would have been justified in imposing appropriate discipline, including termination, and an arbitral award requiring his reinstatement to employment would have violated clear public policy. See, e.g., *Board of Education* v. *Local 566, Council 4, AFSCME*, 43 Conn. App. 499, 500–501, 683 A.2d 1036 (1996), cert. denied, 239 Conn. 957, 688 A.2d 327 (1997) (where grievant had pleaded guilty to and been convicted of fraudulently diverting union funds, award reinstating him to job with responsibility for publicly owned property violated public policy); see also *State* v. *Council 4, AFSCME*, 27 Conn. App. 635, 641, 608 A.2d 718 (1992) (where grievant admittedly had misused state funds by cashing falsely generated public assistance checks, award of reinstatement to employment violated public policy). In either instance, the record would be sufficient to establish that the employee had in fact stolen from his employer. The guilty plea would constitute an admission of guilt; see *Lawrence* v. *Kozlowski*, [171 Conn. 705, 711 n.4, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977)]; and the conviction after trial would be sufficient to establish the fact of the theft, under established principles of issue preclusion. See *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 296–307, 596 A.2d 414 (1991). In either of those instances, the public policy against theft also would include the policy that an employer should not be required to retain in a position of financial trust an employee who has been established to have stolen."

The question posed by this appeal, however, is whether the arbitrator, as a matter of law, was required to determine that a conviction *after a plea of nolo con-*

*tendere,* as opposed to a plea of guilty or a conviction after a trial, established just cause for Warren's termination. The majority concludes that an arbitral award requiring an employer to reinstate an employee who has been terminated following a conviction of embezzling the employer's funds violates public policy irrespective of whether his conviction followed a trial, a guilty plea or a nolo contendere plea. The decision in this case does not turn, however, simply on whether the threat to the employer's legitimate expectations are removed or significantly ameliorated by the fact that the conviction of embezzlement rests upon a plea of nolo contendere, as opposed to a plea of guilty or a trial. Indeed, the public policy against embezzlement encompasses the policy that an employer should not be compelled to reinstate an employee who has embezzled the employer's funds, regardless of whether the employee even has been charged with, let alone convicted of, such an offense. Rather, the decision in this case turned on the arbitrator's finding that, because the employer had not sought to prove independently that Warren had embezzled its funds, relying exclusively on his nolo plea, the employer established "little or nothing about [Warren's] guilt or innocence . . . ."

Although a conviction following a plea of nolo contendere has the weight of a final adjudication of guilt, and shares some characteristics of a guilty plea,[1] its limited evidentiary value is undisputed. As this court has stated, unlike a plea of guilty, "a plea of nolo contendere is merely a declaration by the accused that he will not contest the charge, and even though followed by a finding of guilty and the imposition of a fine or other penalty,

---

[1] See *North Carolina* v. *Alford,* 400 U.S. 25, 35–36 n.8, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) (plea of nolo contendere has same legal effect as plea of guilty on all further proceedings); *Boykin* v. *Alabama,* 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (nolo contendere plea constitutes waiver of all nonjurisdictional defects).

is not admissible, either as a verbal admission or an admission by conduct. *Casalo* v. *Claro*, 147 Conn. 625, 632, 165 A.2d 153 [1960]. Nor is it admissible to affect a party's credibility, as evidence of an arrest, or as res judicata establishing that the plaintiff was engaged in a criminal act. *Krowka* v. *Colt Patent Fire Arm Mfg. Co.*, 125 Conn. 705, 713, 8 A.2d 5 [1939]; see also Holden & Daly, Connecticut Evidence § 103f. Pleas of nolo contendere may be entered for reasons of convenience and without much regard to guilt and collateral consequences. McCormick, Evidence (2d Ed.) § 265, p. 636. Even though the plea may be regarded as a tacit admission, its inconclusive and ambiguous nature dictates that it should be given no currency beyond the particular case in which it was entered. *A. B. Dick Co.* v. *Marr*, 95 F. Sup. 83, 101 (S.D.N.Y. [1950]); *State* v. *Thrower*, 272 Ala. 344, 346, 131 So. 2d 420 [1961]; *Federal Deposit Ins. Corporation* v. *Cloonan*, 165 Kan. 68, 90, 193 P.2d 656 [1948]; *State* v. *Fitzgerald*, 140 Me. 314, 318, 37 A.2d 799 [1944]; *State* v. *LaRose*, 71 N.H. 435, 439, 52 A. 943 [1902]; *Honaker* v. *Howe*, 60 Va. (19 Gratt.) 50, 53 [1869]; see 4 Wigmore (3d Ed.) § 1066; annot., 18 A.L.R.2d 1287, 1314 § 5; annot., 152 A.L.R. 253; Fed. R. Crim. Procedure 11 (e) (6)." (Internal quotation marks omitted.) *Lawrence* v. *Kozlowski*, supra, 171 Conn. 711–12 n.4.

In reviewing an arbitration award, even on a claim of a public policy violation, neither the trial court nor this court has authority to make findings of fact that the arbitrator did not make. See, e.g. *United Paperworkers International Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29, 36–38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987); *New York State Correctional Officers & Police Benevolent Assn., Inc.* v. *New York*, 94 N.Y.2d 321, 704 N.Y.S.2d 910, 726 N.E.2d 462 (1999). Notably, the arbitrator made a factual finding that Warren, the employee in the present case, had consulted an attorney, who, in reliance

on *Lawrence*, had advised him that a plea of nolo contendere was not an admission of guilt.

In the present case, there is, therefore, no factual foundation whatsoever for the assertion that Warren embezzled even one penny from his employer. As the arbitrator observed, for all anyone knows, Warren may have been accused falsely by a disgruntled landfill user or by someone else who harbored unfounded suspicions of misconduct. The arbitrator made a factual finding, which is binding on this court, that Warren, pursuant to the advice of counsel and "under the *Lawrence* decision" that his plea could not be used against him, pleaded nolo contendere because, for financial reasons, he had deemed such a plea a more convenient and cleaner way to resolve the charges against him.

Our case law does not permit the inference that a nolo contendere plea automatically fills in this gap in the factual findings made by the arbitrator. *Lawrence* v. *Kozlowski*, supra, 171 Conn. 711–12 n.4. The holding in *Lawrence* has not been questioned until now. Nor has that holding been limited until now. The majority in this case concludes that, although a plea of nolo contendere and a conviction based thereon may not be admitted into evidence in a subsequent civil action or administrative proceeding to establish either an admission of guilt or the occurrence of criminal conduct, it is unfair to expect an employer to set aside its legitimate expectations, solely because of the differences between a conviction based upon a guilty plea or a trial and a conviction based upon a nolo contendere plea. The employer, however, need not set aside these expectations by reinstating an employee convicted of embezzling its funds. The employer may vindicate these expectations by demonstrating the misconduct that undermines its interests. A conclusion that the award conflicted with public policy therefore requires a determination that Warren embezzled, a finding that, because

of the employer's reliance on his nolo plea, was not made.[2] In the absence of this finding, the majority's decision distills to what is essentially a determination that the arbitrator's adherence to our well established jurisprudence that a nolo plea is of limited precedential value was itself a violation of public policy.

As the majority acknowledges, when a challenge to an arbitrator's award is made on public policy grounds, the reviewing court is not concerned with the correctness of the arbitrator's decision, but, rather, with the lawfulness of the award. *Board of Trustees* v. *Federation of Technical College Teachers*, 179 Conn. 184, 195, 425 A.2d 1247 (1979). That evaluation "is to be ascertained by reference to the laws and legal precedents . . . ." (Internal quotation marks omitted.) *New Haven* v. *AFSCME, Council 15, Local 530*, 208 Conn. 411, 417, 544 A.2d 186 (1988). In the present case, the arbitrator adhered to our laws and legal precedents. I therefore fail to understand how, by following that law, and by failing to recognize the employment context exception announced today for the first time by the majority, the arbitrator violated any clear public policy.

Finally, other than relying on the legitimate expectations of the employer, the majority does not explain adequately why we now[3] should treat a conviction fol-

---

[2] I recognize that the town's personnel rules provide that conviction of an offense involving the employee's duties may serve as a basis for discharge from employment. See footnote 5 of the majority opinion. To conclude, however, as the majority does, that the arbitrator violated public policy by reinstating Warren would require a finding that he had in fact stolen from the town, a finding that the arbitrator did not make.

[3] The majority focuses on the legitimate expectations of the employer, leaving no room for consideration of the legitimate expectations of the employee. To assure a criminal defendant that his plea of nolo contendere will not be used against him, as in this case, and then to allow it to be the basis for his termination, particularly when the arbitrator has recognized the financial circumstances at play that induced the plea, is both unfair and, arguably, a violation of the plea agreement.

lowing a nolo plea in the employment context differently from the way we traditionally have treated it in the civil and administrative arenas where other equally important interests are at stake. The majority states in its opinion that the employment context is different because it is premised on the notion that "arbitration is essentially a private ordering scheme for resolving disputes . . . ." Although that is true, the arbitral process quite often becomes part of the public process of civil litigation. Additionally, not all arbitrations are unrestricted. Furthermore, not all employment cases are decided by arbitration. Nevertheless, according to the majority, Warren's nolo plea properly should have constituted substantive evidence in the arbitration proceeding, while, under *Lawrence* v. *Koslowski*, supra, 171 Conn. 712, his nolo plea could not have been used for substantive purposes had he been required to bring a civil action under his employment contract. Only if we were to overrule *Lawrence* in that context, a remedy that has not been sought, could the treatment be consistent. If it is, in fact, the employment context that is so significant, I fail to understand the disparate treatment of the evidence. There is certainly no indication in this case to even suggest that the expectations of the employer concerning the evidence upon which it could rely depended upon the forum in which Warren's termination could be litigated.

In conclusion, in deciding to treat a conviction following a nolo plea differently from a conviction resulting from a trial or a guilty plea, we have engaged in a balancing test and have determined that facilitating resolution of criminal cases is paramount. By relying on the private nature of arbitration as a basis upon which to create an exception to our jurisprudence regarding the limited use of the nolo plea, the majority, in essence, takes the first step toward the elimination of the nolo

plea. While that step is certainly within its purview, I do not see its necessity.

Accordingly, I respectfully dissent.