[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties in this case have brought cross applications, Founders 14, LLC to vacate and CB Richard Ellis-N.E. Partners, LP, to confirm a certain arbitration award dated October 21, 2002 resolving a dispute for a real estate commission. The court determines the issues for CB Richard Ellis-N.E. Partners, LP and confirms the award.
The facts are as follows: Founders 14, LLC (hereinafter Founders) was the owner of commercial property known as Founders Plaza in East Hartford, Connecticut (hereinafter referred to as the Plaza). CB Richard Ellis-N.E. Partners, LP (hereinafter Ellis) is a real estate broker licensed in Connecticut. On September 1, 1998 the parties entered into a listing agreement by the terms of which Ellis was retained as exclusive broker to sell or lease the Plaza. The term of the listing initially was until December 31, 1998 but was extended until June 30, 2001. The listing agreement also provided that Ellis was entitled to a commission if within 180 days after the expiration of the term, Founders entered into a contract for sale of the property.
Paragraph 6 of that agreement provided:
Owner [Founders] further agrees to pay Broker [Ellis] a sales commission of two percent (2%) of the sales price. This commission shall be earned and paid if, during the Term: (a) (sic) a Purchaser is procured (by Broker, Owner, of anyone else) who is ready, willing and able to purchase the property for $25,000,000.
Paragraph 7 provided that Founders would pay Ellis all costs and fees including reasonable attorneys fees for collection of any commission, and interest on the unpaid commission at the rate of one percent (1%) per month.
Paragraph 11 provided that in the event of any dispute between the parties, "such dispute shall be resolved by means of binding arbitration CT Page 3045 in accordance with commercial arbitration rules of the American Arbitration Association . . ." It further stated that the prevailing party in the arbitration would be entitled to recover its expenses, including cost of the arbitration proceedings and reasonable attorneys fees. All the parties agree that that arbitration provision created an unrestricted submission.
Ellis initiated efforts to find a purchaser and was successful in locating Merchant Founders, LLC. On June 6, 2001, Founders entered into an agreement of purchase and sale with Merchant Founders, LLC (hereinafter Merchant), under the terms of which Founders agreed to sell and Merchant agreed to buy the Plaza for $23,250,000. That agreement was an extensive one consisting of twenty-one, single spaced pages and stated a number of contingencies, including the assumption of an outstanding first mortgage by the mortgagee. It also provided that it could be amended by the consent of both parties thereto.
Merchant had difficulty meeting certain of the contingencies of the sale, and negotiations between Founders and Merchant continued, with Ellis participating and facilitating them. As of January 2, 2002, Founders and Merchant agreed to an amendment to the original purchase and sale agreement, providing for the sale to take place on revised terms. The closing occurred on January 22, 2002.
When Founders refused to pay Ellis the 2% commission on the sales price of $23,250,000 ($465,000), Ellis claimed the matter to arbitration in accordance with the listing agreement. Parties agreed on three experienced lawyers as arbitrators. The arbitration hearing lasted three days and numerous witnesses were called.
Founders asserted two defenses in that proceeding: (1) The listing agreement provided Ellis was entitled to a commission on procuring a purchaser at the price of $25,000,000, and Ellis failed to obtain a purchaser at that price, and (2) The listing agreement itself had expired before Ellis had obtained any purchaser. Accordingly, Founders argued that, under prevailing law relating to real estate commissions, Ellis could not recover.
In response, Ellis argued, as to Founders' first ground that paragraph 6 consisted of two sentences. The first sentence ("Owner further agrees to pay Broker a sales commission of two percent (2%) of the sales price"), was unequivocal and set forth the obligation of Founders. The second sentence of paragraph 6, to the effect that a commission would be earned and paid if a purchaser were procured by the broker who was ready, willing and able to purchase the property at $25,000,000, covered CT Page 3046 the situation where the broker procured a buyer, but the seller refused to sell to that buyer for reasons not within the broker's control. To resolve the apparent ambiguity between the two sentences in paragraph 6, Ellis offered extensive evidence that Founders' attorneys had edited the language of that paragraph and so it should be construed against them, and, further, that throughout the extensive negotiations over the purchase of the property, in which Ellis was involved, Founders had never indicated that Ellis was not entitled to a commission if the $25,000,000 purchase price was not obtained.
As for Founders' claim that the listing agreement had expired, Ellis argued that it had obtained a purchaser ready, willing and able to buy the property by virtue of the June 6 original purchase and sale agreement and that that agreement was clearly within the term of the listing agreement. The amendment, dated as of January 2, 2002, of the original purchase and sales agreement recited that whereas the parties had entered into "a certain Agreement of Purchase and Sale of Real Property and Escrow Instructions dated as of June 6, 2001 (the `Original Purchase Agreement')," and whereas the parties had agreed to extend the closing date of the sale, and whereas all capitalized terms used in the amendment should have the same meaning as those in the original purchase agreement, the seller and buyer agreed to "amend the Purchase Agreement on the terms and conditions set forth in this Amendment." Ellis argued the amendment related back to the original purchase and sale agreement of June 6, 2001 and continued it in full force and effect. Moreover, it asserted, even if the amendment, as of January 2, 2002, were a new agreement, it would have been entered into only a few days after the end of the tail period of 180 days (December 30, 2001) of the listing agreement, as provided for in paragraph 5, and so it would be inequitable to deny Ellis its commission after all its efforts to effectuate the sale.
The arbitrators, in their award dated October 21, 2002, awarded Ellis compensatory damages in the amount of $465,000, plus interest of $41,735.34 and attorneys fees of $40,000. They agreed with Ellis' interpretation of paragraph 6 of the listing agreement, to the effect that Ellis was entitled to the commission despite the fact that the $25,000,000 purchase price was not obtained. They further found that Ellis obtained a purchaser before the expiration of the listing agreement, by interpreting the amendment, dated January 2, 2002, to be a continuation of the original purchase and sale agreement which remained in full force and effect and that "the property was sold pursuant to a contract entered into during the term of the listing agreement."
Founders now attacks the award on two grounds: (1) The award CT Page 3047 demonstrated a manifest disregard of the law, and (2) It is against public policy.
 1. MANIFEST DISREGARD OF THE LAW
Because the law favors arbitration as a means of settling private disputes, the courts are restrained to interfere with this efficient and economical method of alternative dispute resolution. Middletown v. PoliceLocal No. 1361, 187 Conn. 228, 230 (1982). State v. Connecticut EmployeesUnion Independent, 184 Conn. 578, 579 (1981). When a submission to arbitration is unrestricted (as it is here), the resulting award is not subject to de novo court review even for errors of law, so long as the award conforms to the submission. Hartford v. Board of Mediation andArbitration, 211 Conn. 7, 14 (1989); New Haven v. AFSCME, Council 15,Local 530, 208 Conn. 411, 415-16 (1988).
Even in the case of an award conforming to an unrestricted submission, however, our courts recognize three grounds for vacating an award: (1) The award rules on the constitutionality of a statute; (2) the award violates clear public policy; (3) the award contravenes one or more of the statutory proscriptions of Conn. Gen. Stat. § 52-418. Garrity v.McClaskey, 223 Conn. 1 (1992). Lathuras v. Shoreline Dental Care, LLC,65 Conn. App. 509, 512 (2001).
Among the grounds set forth in § 52-413 for vacating an award is "(4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." Our courts have recognized that that statutory provision may encompass a doctrine of manifest disregard of the law. Garrity v. McClaskey, supra, at 7. In reaching that conclusion our Supreme Court relied upon Federal court decisions, such as MerrillLynch, Pierce, Fenner Smith, Inc. v. Bobker, 808 F.2d 930 (2d Cir. 1986). In that case the Federal court held that "`manifest disregard of the law' clearly means more than error or misunderstanding with respect to the law; the error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term `disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it . . . Judicial inquiry under the `manifest disregard' standard is therefore extremely limited. The governing law alleged to have been ignored by the arbitrators must be well defined, explicit and clearly applicable. We are not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of law urged upon it." Id., 933-34. CT Page 3048
Our Supreme Court, therefore, concluded in Garrity v. McClaskey,supra, 233 Conn. at 10, that "an award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has `exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made.' We emphasize, however, that the `manifest disregard of the law' ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles."
The court further noted the doctrine "is an important safeguard of the integrity of the alternate dispute resolution mechanisms. Judicial approval of arbitration decision that so egregiously depart from established law that they border on the irrational would undermine society's confidence in the legitimacy of the arbitration process." Id.
at 10.
In Lathuras v. Shoreline Dental Care, LLC, supra, the Appellate Court emphasized that the manifest disregard of the law doctrine could only be applied where the arbitrator knew that the award was contrary to law and deliberately ignored that governing law.
Here, the arbitrators determined Ellis had earned its commission by procuring a purchaser at the price of $23,250,000 and did so within the time period of the listing agreement. Founders claims the arbitrator misconstrued the provisions of the listing agreement on those two counts. Even if that were the case, (which the court finds it was not), such a legal error would not rise to the level of manifest disregard of the law. There is no showing the arbitration decision was an "egregious or patently irrational application of governing law" or that the arbitrators "deliberately ignored" that governing law.
The thrust of Founder's claim is that it disagrees with the arbitrators' conclusion. Where there is an unrestricted submission, however, "arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous." Wachter v. UDV North America, Inc.,75 Conn. App. 538, 545 (2003).
 2. Public Policy Exception
A second ground for vacating an arbitration award is that it violates CT Page 3049 public policy. This is a common law basis that exists outside of the statutory grounds contained in § 52-418, Town of Groton v. UnitedSteelworkers of America, 254 Conn. 351 44 (2001). Garrity v. McClaskey,supra, Zeldes Needle Cooper v. Shrader, 45 Conn. Sup. 130, 133,19 Conn.L.Rptr. 472 (1997).
When a challenge to the arbitrator's authority is made on public policy grounds "the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award."Town of Groton, supra, at page 46. Therefore under the public policy exception, the issue for a court is not whether the arbitrator properly applied the law or the facts but whether the award contravenes clear public policy. Id.
A statute expresses public policy and a clear violation of a statute can constitute a violation of public policy. State v. AFSCME Council 4,Local 387, AFL-CIO, 252 Conn. 467, 477 (2002). Here Founders claims that the award violated Conn. Gen. Stat. § 20-325a. That statute, relating to actions to recover real estate commissions, provides that a person bringing such an action must be licensed as a real estate agent or broker and must have performed the services pursuant to a written contract with the seller that contains prescribed provisions. If, in this case, Ellis had not been licensed or its authority to act had not been expressed in a written agreement, Founders' public policy agreement might carry considerable weight.
That is not the situation here. Ellis was licensed and the listing agreement was in writing and complied with all the requirements of §20-235a. However, Founders argues that the courts have strictly construed that statute and the terms of listing agreements and its decisions have denied recovery to a real estate broker when he has not met the terms of the listing agreement as to price or performed within the time period of the listing agreement. Specifically, Founders relies upon Ditchkus RealEstate Co. v. Storm, 25 Conn. App. 51 (1991), in which the court determined that the final sales agreement between the buyer and seller were reached two years and seven months after the termination of the plaintiff's listing agreement, and, as consequence, the plaintiff real estate broker was not entitled to his commission.
However, Ditchkus is distinguishable on its facts because, here, even construing the facts most adversely to Ellis, the listing agreement expired only a few days after the 180 day tail period. Moreover,Ditchkus was decided in 1991, before § 20-325 was amended in 1994 by adding subsection (d) to the effect a real estate broker commission should not be denied if it would be inequitable to do so and the broker CT Page 3050 had substantially complied with the statute. Here, the arbitrators properly found that Ellis had earned its commission by obtaining a buyer at $23,250,000 and within the period of the listing agreement. Moreover, it concluded on all the evidence that Ellis' interpretation of the pivotal paragraph 6 of that agreement was the more equitable, rational and reasonable.
More significantly, the public policy exception to arbitral authority should be "narrowly construed," Watertown Police Union Local 541 v.Watertown, 210 Conn. 333, 340 (1989), and applies only when the award is "clearly illegal or clearly violative of a strong public policy." Garrityv. McClaskey, supra, 223 Conn. 7. The exception is premised on the principle that just as a contract against public policy will not be enforced by the court, so an arbitration award approving conduct contrary to public policy cannot receive judicial endorsement. Board of Trusteesv. Federation of Technical College Teachers, 179 Conn. 184, 195 (1979). That exception has, for example, been applied in Groton v. United SteelWorkers of America, 254 Conn. 35, to vacate an arbitrator's award requiring the reinstatement of an employee who had embezzled funds on the grounds that there was a clear public policy against embezzlement. Likewise, it was applied in State v. R.A. Civitello Co., 6 Conn. App. 438
(1986) to overturn an arbitration award in favor of a contractor when there had been a violation of statutes prescribing the procedures for bidding on public contracts. And in International Brotherhood of PoliceOfficers v. Windsor, 40 Conn. Sup. 145 (1984), it was applied to vacate an arbitration award disciplining a police officer who had refused to sign a false arrest warrant return on the ground of the important public policy that police officers tell the truth.
Here, the public policy Founders asserts is that a real estate broker was allowed recovery in contradiction to stated terms of the listing agreement.
First, the court finds the arbitrators did not violate the terms of the listing agreement in making its award. Second, even if they did misconstrue the contract or misapply the law of real estate commissions, it was a legal error that is not reviewable by this court, Wachter v. UDVNorth America, Inc., supra, and, certainly, does not amount to the violation of "a strong public policy."
Thus, neither ground Founders asserts to vacate the award has merit.
As a consequence, this court concludes that the application of Ellis to confirm the award is granted and application of Founders to vacate the award is denied. CT Page 3051
 Robert Satter Trial Judge Referee
CT Page 3052