CITY RECYCLING, INC. *v.* STATE OF CONNECTICUT
ET AL.
(SC 15940)

Borden, Berdon, Norcott, Palmer and Peters, Js.

Argued December 2, 1998—officially released February 23, 1999

*Alan Neigher*, with whom were *Judith M. Trutt* and
*William E. Strada, Jr.*, for the appellant (plaintiff).

*Richard F. Webb*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellees (defendants).

*Opinion*

PETERS, J. General Statutes § 22a-208a (a),[1] as amended in 1997 by Public Acts 1997, No. 97-300, § 2, prohibits the commissioner of environmental protection from approving, for a city with a population of greater than 100,000, the establishment or construction of "a new volume reduction plant or transfer station located, or proposed to be located, within one-quarter mile of a child day care center . . . ." The substantive issue before us is whether this statute accords with the requirements of our state constitution. The issue comes to us by way of the parties' stipulation of facts and the trial court's reservation of two questions challenging the constitutionality of the statute on the grounds of denial of due process and of equal protection of the laws. See Practice Book § 73-1.[2] The propriety of our

[1] General Statutes § 22a-208a (a), as amended by Public Acts 1997, No. 97-300, § 2, provides in relevant part: "(a) The Commissioner of Environmental Protection may issue, deny, modify, renew, suspend, revoke or transfer a permit, under such conditions as he may prescribe and upon submission of such information as he may require, for the construction, alteration and operation of solid waste facilities, in accordance with the provisions of this chapter and regulations adopted pursuant to this chapter. . . . The commissioner shall not authorize under a general permit or issue an individual permit under this section to establish or construct a new volume reduction plant or transfer station located, or proposed to be located, within one-quarter mile of a child day care center, as defined in subdivision (1) of subsection (a) of section 19a-77, in a municipality with a population greater than one hundred thousand persons provided such center is operating as of [July 8, 1997.] The commissioner may modify or renew a permit for an existing volume reduction plant or transfer station, in accordance with the provisions of this chapter, without regard to its location. . . ."

[2] Practice Book § 73-1 provides in relevant part: "(a) Any reservation shall be taken to the supreme court or to the appellate court from those cases in which an appeal could have been taken directly to the supreme court, or to the appellate court, respectively, had judgment been rendered. Reservations in cases where the proper court for the appeal cannot be determined prior to judgment shall be taken directly to the supreme court.

consideration of the reserved questions depends upon the sufficiency of the stipulated facts to provide the necessary foundation for a proper constitutional analysis of § 22a-208a (a), as amended. See *State* v. *Zach*, 198 Conn. 168, 502 A.2d 896 (1985). We conclude that the questions were reserved improvidently and remand this case to the trial court.

The plaintiff, City Recycling, Inc., brought an action for a declaratory judgment[3] claiming that the defendants, the state of Connecticut and Sidney Holbrook, commissioner of the department of environmental protection (department),[4] improperly had refused to process the plaintiff's application to expand its existing recycling facility in Stamford. In the proposed expansion, the plaintiff intended to operate a volume reduc-

---

"(b) All questions presented for advice shall be specific and shall be phrased so as to require a Yes or No answer.

"(c) Before any question shall be reserved by any court, counsel shall file in that court a stipulation which shall clearly and fully state the question or questions upon which advice is desired; that their present determination by the appellate court having jurisdiction would be in the interest of simplicity, directness and economy in judicial action, the grounds for such allegation being particularly stated; that the answers to the questions will determine, or are reasonably certain to enter into the final determination of the case; and that the parties request that the questions be reserved for the advice of the appellate court having jurisdiction. The stipulation shall also designate the specific pleadings in the trial court case file which are necessary for the presentation of the question or questions sought to be reserved and shall state the undisputed facts which are essential for determination of the question or questions sought to be reserved. With the stipulation the parties shall file a joint docketing statement in the format specified in Section 63-4 (a) (4) for regular appeals. . . .

"(e) The court will not entertain a reservation for its advice upon questions of law arising in any action unless the question or questions presented are such as are, in the opinion of the court, reasonably certain to enter into the decision of the case, and it appears that their present determination would be in the interest of simplicity, directness and economy of judicial action. . . ."

[3] The plaintiff complied with the notice requirements of Practice Book § 390 (d), now § 17-55 (4).

[4] For purposes of convenience, we will refer to the defendants jointly as the department. The record reflects no interest of the state of Connecticut other than that of the department.

tion facility for nontoxic materials. The department informed the plaintiff that, because of the amendment of § 22a-208a (a), its application could no longer be processed. Without questioning that § 22a-208a (a), as amended, controlled the proposed expansion, the plaintiff claimed that the statute violated its rights to due process under article first, § 8,[5] of the Connecticut constitution, and its rights to equal protection of the law under article first, §§ 1 and 20,[6] of the Connecticut constitution.[7]

The parties agreed upon a stipulation of facts and jointly petitioned the trial court for a reservation of the plaintiff's constitutional challenges to § 22a-208a (a), as amended. In framing the constitutional challenges, the parties did not distinguish between facial constitutional attacks on § 22a-208a (a), as amended, and attacks on the statute in the factual circumstances of this case. The trial court granted the joint petition in the manner in which the parties had formulated it.

I

The stipulation of facts describes both the background of the department's policies for environmental permits concerning solid waste reduction and the plaintiff's own operations and permit application. The stipulation relies, in large part, on materials contained in an

---

[5] Article first, § 8, of the Connecticut constitution provides in relevant part: "No person shall . . . be deprived of life, liberty or property without due process of law . . . ."

[6] Article first, § 1, of the Connecticut constitution provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

Article first, § 20, of the Connecticut constitution, as amended by article twenty of the amendments, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

[7] The record contains no answer by the department to the plaintiff's complaint.

appendix filed by the plaintiff in conjunction with its complaint.

## A

The Connecticut Solid Waste Management Plan articulates the state's policy to encourage private enterprise to play an active role in the reduction of solid waste. Facilities that have received permits to play such a role are regularly monitored to assure their compliance with state standards for permitted materials and required safeguards. Permits have not been granted for proposed volume reduction facilities that posed a health hazard to any humane institution, such as a school.

The department is unaware of any studies that document an environmental risk to humane institutions, such as child care centers, from solid waste volume reduction plants located nearby. No prior department environmental policy envisaged, or had sought legislative authorization for, the environmental controls contained in § 22a-208a (a), as amended.

## B

The plaintiff has been in the waste management and disposal business in Stamford since 1991. In 1995, the department granted the plaintiff a state permit to operate a single-item recycling facility at its present location.

In early April, 1997, the plaintiff sought a solid waste permit to expand the facility to enable it to operate a volume reduction facility for nontoxic, predominantly nonperishable materials, such as wood, paper, cardboard and demolition materials. The permit application was filed pursuant to § 22a-208a (a), prior to the statute's amendment in June, 1997.

In support of its application to the department, the plaintiff presented signatures of support from abutting property owners and letters of support from the local

community. The city of Stamford granted the plaintiff the zoning permits that it needed; no one objected to their issuance. On April 21, 1997, the department informed the plaintiff that its application had passed its initial sufficiency review and that the technical review process had begun.[8]

In response to the publication of legal notice of the plaintiff's application, Representative Ann McDonald requested further information from the department about the proposed expansion. Other local legislators also expressed their interest. On May 5, 1997, pursuant to § 22a-208a (e),[9] the department notified the legislators of its intention to schedule a public hearing on the plaintiff's application. The department received negative comments about the application only in letters sent by Representative McDonald and the mayor of Stamford, Dannel P. Malloy.

On June 4, 1997, prior to the scheduling of a date for the public hearing on the plaintiff's application, the legislature amended § 22a-208a (a). The amendment was supported by legislators from southwestern Connecticut, where Stamford is located. Because the geographical limitations imposed by the amendment barred

[8] The plaintiff had hired experts to facilitate the department's inquiry into the merits of the plaintiff's application.

[9] General Statutes § 22a-208a (e) provides: "The commissioner may hold a public hearing prior to approving or denying an application if in his discretion the public interest will be best served thereby, and shall hold a hearing upon receipt of a petition signed by at least twenty-five persons. The commissioner may amend a permit to construct or to operate, without hearing, for minor changes in the facility design, practices or equipment that would not in his judgment significantly change the nature of the facility or its impact on the environment. Notwithstanding the provisions of this subsection, the commissioner shall conduct a public hearing on an application for a permit to construct a new solid waste disposal area. Such public hearing shall be commenced in the municipality in which the facility is to be located or a location in close proximity to said municipality. Notwithstanding the provisions of this subsection, if a hearing has been held on and after July 1, 1993, on an application for a permit to construct or alter

the plaintiff's proposed expansion, the department ceased processing the plaintiff's application.

As a result of the department's action, the contemplated technical review of the plaintiff's permit application was not completed. If that process had gone forward, the department would have inquired into potential traffic and environmental problems. It would have considered favorable and unfavorable public comments as well as the plaintiff's compliance history. The department ordinarily would have taken at face value any engineering study provided by an applicant that showed that the proposed activity would not negatively impact traffic in the neighborhood. In its preliminary review of the plaintiff's application, the department had discerned no environmental hazards.

Richard J. Barlow, the chief of the department's bureau of waste management, made statements in his deposition that supported the plaintiff's application.[10] According to Barlow, the department had no evidence of any existing departmental or state waste management policy, or any other existing policy, that was furthered or advanced by the amended § 22a-208a (a). Because of the "grandfathering" provision in the statute, the department will not be required automatically to reject permit applications seeking renewal or extension of existing volume reduction plants or transfer stations. As a result, the present plaintiff will be prohibited from operating a waste reduction facility, while other, similarly situated entities will be allowed to continue and to expand their operations.

a solid waste facility, the commissioner shall not hold a hearing on an application for a permit to operate such facility."

[10] With respect to Barlow's deposition testimony, the stipulation is limited to an affirmation of what Barlow stated. It does not purport to evaluate that testimony in any way.

## II

We turn first to the constitutionality of § 22a-208a (a), as amended, on its face. As we observed in *Zach*, "the reserved questions as phrased require us to pronounce upon the facial validity of [§ 22a-208a (a), as amended]. It is a settled rule of constitutional adjudication that a court will decide the constitutionality of a statute only as it applies to the particular facts at hand. . . . A party who challenges the constitutionality of a statute must prove that the statute has adversely affected a protected interest under the facts of his particular case and not merely under some possible or hypothetical set of facts not proven to exist. . . .

"This principle reflects the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of legislative enactments. . . . The effect of an answer in the affirmative to any one of the reserved questions would be to declare [§ 22a-208a (a), as amended] unconstitutional in its entirety. The issue, however, as we must address it, is whether the statute has been unconstitutionally applied to [this plaintiff]. We are bound never to anticipate a question of constitutional law in advance of the necessity of deciding it [and] never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied. . . . A judicial holding that a legislative Act is unconstitutional is one of very grave concern. We ought not, and will not, declare a statute to be unconstitutional unless our judgment is formed in the light of this rule of our law: It is our duty to approach the question with caution, examine it with infinite care, make every presumption and intendment in its favor, and sustain the Act unless its invalidity is, in our judgment, beyond a reasonable doubt. . . .

"These principles of constitutional jurisprudence are no less pertinent here merely because the issues have

been presented by way of reservation. This court declared long ago that our reservation procedures do not contemplate, and ought not to be construed to permit, that every question which a trial court may encounter . . . might be brought here at once upon its being either met or scented from afar . . . . We recognized that such a practice might inevitably result in this court being called upon to formulate principles of law which would never enter into the determination of a cause, to formulate such principles in an abstract form suited to more or less general application and not as related to a concrete state of facts and narrowed and simplified by such relation, to create a mass of dicta embodying statements of abstract general principles which might some day rise up to harass judicial action, and to unnecessarily multiply the number of appearances in this court which an action might have before final disposition was made of it. . . . We [previously have] emphasized the importance of these discretionary prudential concerns to our determination of whether a reservation should be answered." (Citations omitted; internal quotation marks omitted.) *State* v. *Zach*, supra, 198 Conn. 176–78; see specifically *State* v. *Sanabria*, 192 Conn. 671, 684, 474 A.2d 760 (1984); see also *Statewide Grievance Committee* v. *Whitney*, 227 Conn. 829, 846, 633 A.2d 296 (1993); *Weil* v. *Miller*, 185 Conn. 495, 501, 441 A.2d 142 (1981); *Hardware Mutual Casualty Co.* v. *Premo*, 153 Conn. 465, 471, 217 A.2d 698 (1966).

Adhering to the principles delineated in *State* v. *Zach*, supra, 198 Conn. 176–78, we decline to consider the two reserved constitutional questions insofar as they should be construed as facial challenges to § 22a-208a (a), as amended. Reservation or not, the issues of due process and equal protection of the law can be addressed only in light of the facts of record.

### III

Construing the reserved constitutional questions as challenges to § 22a-208a (a), as amended, as applied, we

must examine the stipulated facts to ascertain whether they provide us with a sufficient basis for the constitutional adjudication that the parties seek. The plaintiff asserts that the statute violates its rights to substantive due process because: (1) the legislature improperly targeted the plaintiff's application; (2) the statute serves no rational purpose; and (3) the statute should not be applied retroactively to a pending permit application. The plaintiff also claims that the statute violates its right to equal protection.

The governing principles of law are undisputed. The parties agree that, because the challenged statute falls within the legislature's broad authority with respect to social and economic regulation, the rational relationship test is the appropriate standard by which the plaintiff's claims must be measured. *D.A. Pincus & Co.* v. *Meehan*, 235 Conn. 865, 875, 670 A.2d 1278 (1996); *Fair Cadillac-Oldsmobile Isuzu Partnership* v. *Bailey*, 229 Conn. 312, 318, 640 A.2d 101 (1994). "[All] legislative enactments carry with them a strong presumption of constitutionality, and . . . a party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt." *Beccia* v. *Waterbury*, 192 Conn. 127, 133, 470 A.2d 1202 (1984); *Chotkowski* v. *State*, 240 Conn. 246, 257–58, 690 A.2d 368 (1997).

The stipulation of facts, however, creates insurmountable difficulties for the constitutional adjudication that we have been requested to undertake. Although other omissions from the stipulation are of interest, the most significant is the absence of any stipulated fact that the plaintiff's proposed expansion poses no reasonable possibility of environmental hazards. If there is a reasonable possibility of such hazards, § 22a-208a (a), as amended, would have a sufficient rational basis to pass constitutional muster. Once the legislature

discovers a newly detected environmental circumstance that may pose a health hazard to children, we know of no basis for requiring it to postpone corrective action until a second example of such a hazard has been documented.[11] Cf. *Chotkowski* v. *State*, supra, 240 Conn. 259 ("[w]hat constitutes a public purpose is primarily a question for the legislature, and its determination should not be reversed by the court unless it is manifestly and palpably incorrect" [internal quotation marks omitted]).

With respect to environmental impact, we do not know whether, as a matter of fact, the plaintiff's application would have passed a complete technical review. The concerns raised by the Stamford legislators might well have elicited expert testimony to challenge the assumptions contained in the plaintiff's application. Perhaps not—but we do not know. The department's stipulated lack of knowledge about an environmental hazard is just that: a lack of knowledge. That the contemplated material for the plaintiff's operations would be "predominantly" nonperishable waste is not self-explanatory. The stipulation to that effect does not rule out the possibility that 49 percent of the material would create pest control problems that might affect neighboring properties. The stipulation that applicants' possible traffic problems ordinarily were resolved by approval of the applicants' own expert studies does not exclude a different result if the plaintiff's permit application had been subjected to additional scrutiny by opponents of the application.

In effect, the stipulation of facts requires us to speculate about the likely outcome of an incomplete application process. The plaintiff's arguments assume that, but

---

[11] The record in *Caldor's, Inc.* v. *Bedding Barn, Inc.*, 177 Conn. 304, 320–24, 417 A.2d 343 (1979), where we reviewed a statute for an equal protection violation, was quite different because the constitutional challenger in that case demonstrated the fact of present differential treatment

for § 22a-208a (a), as amended, it would have received its permit. A fact finder might make such a finding, after a full trial including the presentation of relevant evidence to supplement that contained in the stipulation. Again: it might do so, or it might not. We conclude that the plaintiff has failed to provide a sufficient basis for a determination that it has, in fact, suffered any constitutional deprivation.

The reserved questions are not answered; the case is remanded for further proceedings according to law.

No costs will be taxed to any party.

In this opinion the other justices concurred.

of similarly situated competitors. The differential treatment resulted from purported distinctions within the text of the statute, rather than from a "grandfather" clause.