## METROPOLITAN DISTRICT COMMISSION *v.* LOCAL 184, COUNCIL 4, AFSCME, AFL-CIO, ET AL.
### (AC 22641)

Foti, Dranginis and Hennessy, Js.

Argued February 24—officially released July 8, 2003

*J. William Gagne, Jr.*, with whom, on the brief, was *P. Jo Anne Burgh*, for the appellants (defendants).

*Bourke G. Spellacy*, with whom, on the brief, were *Bernard E. Jacques* and *Barbara A. Frederick*, for the appellee (plaintiff).

*Opinion*

DRANGINIS, J. The defendants, Local 184, Council 4, AFSCME, AFL-CIO (union), and William Rodriguez, appeal from the judgment of the trial court granting the application of the plaintiff, Metropolitan District Commission, to vacate an arbitration award. On appeal, the defendants claim that the court improperly vacated the arbitration award on the ground that the arbitrators' award violated public policy. We agree and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history are relevant to the defendants' appeal. Rodriguez was an employee of the plaintiff. The plaintiff operates a facility under a contract with the Connecticut Resources Recovery Authority (CRRA) to receive solid waste from participating towns. The plaintiff then converts that waste into a fuel product that can be burned to produce steam to drive turbines, which, in turn, generate electricity. In operating the facility, the plaintiff is contractually obligated to follow certain procedures that are dictated by the CRRA. Pursuant to those procedures, only trucks with permits are allowed to enter the facility to dump solid waste materials. Furthermore, CRRA prohibits certain wastes from being dumped at the plaintiff's facility and prohibits the plaintiff from accepting waste on Saturday afternoons, Sundays and some legal holidays. Although the plaintiff does not accept waste

during those times, it continues to operate the facility to ensure that CRRA has adequate fuel to meet its generating capacity and to provide security for the facility. Two operators are assigned to work during the time that the plaintiff's facility is closed for dumping. Those operators are responsible for feeding the power block and for providing security.

In response to a rash of vandalism, the plaintiff installed fifteen security cameras throughout its facility with the knowledge and consent of the union. On Tuesday, October 27, 1998, an employee advised the manager of the plaintiff's facility to review the security tapes from the previous Sunday, October 25, 1998. A review of those tapes revealed that on the previous Sunday, a large truck had entered the facility and dumped a load of unidentified material. After dumping the material, the truck drove around to the rear of the facility, an area that is off limits to nonemployees. The truck approached one of the plaintiff's employees. It later was determined that that employee was Sebastian Stevens. After conversing for a short time with the occupants of the truck, Stevens went to the dumping floor and moved the materials that the truck had just dumped to an existing waste pile.

The plaintiff conducted an investigation into the events of October 25, 1998. As part of its investigation, the plaintiff's manager interviewed Stevens because Stevens was one of the two employees on duty at the facility on the date of the incident. After the interview, the manager decided that he would discipline Stevens because Stevens had failed to report that an unauthorized truck had entered the facility and dumped materials, and because he was evasive when questioned by the manager. The plaintiff scheduled Stevens' disciplinary hearing for November 20, 1998. On November 19, 1998, Rodriguez, accompanied by two union stewards, approached the manager and handed him a written

statement. In that statement, Rodriguez admitted that he was an occupant[1] of the truck that entered the facility on Sunday, October 25, 1998. Upon learning that Rodriguez was an occupant of the truck, the manager immediately suspended Rodriguez.

Subsequently, the plaintiff scheduled a disciplinary hearing for Rodriguez. At Rodriguez' disciplinary hearing, he admitted that he had escorted an unauthorized truck onto the property, dumped unidentified materials, and breached rules and procedures that were designed to safeguard the public and the facility of the plaintiff. On the basis of those facts, the plaintiff terminated Rodriguez' employment.

Thereafter, the union filed a grievance on Rodriguez' behalf challenging his termination. In accordance with the collective bargaining agreement between the union and the plaintiff, the parties submitted the grievance to arbitration. The issues before the three member arbitration panel were as follows: (1) "Was the termination of the employment relationship of Mr. William Rodriguez on November 20, 1998 for just cause?" and (2) "If not, what shall the remedy be?"

The arbitration panel conducted a hearing and, on March 14, 2000, issued its award in which it concluded that the plaintiff had terminated Rodriguez' employment without just cause.[2] The panel explained that in making its determination as to whether the plaintiff's termination of Rodriguez was for just cause, it looked to the "rule" that the plaintiff claimed Rodriguez had violated. The panel determined that although there were

---

[1] In the record, Rodriguez is, at times, referred to as the operator of the vehicle and, at other times, an occupant of the vehicle.

[2] The award stated as follows: "Grievance is sustained in part. The termination of the employment relationship of Mr. William Rodriguez on November 20, 1998 was not for just cause. [Rodriguez] shall be suspended for two weeks without pay. He shall be paid all lost wages for the period of his suspension, less any wages earned during the period in question."

rules and regulations posted at the plaintiff's facility, those rules pertained to processing vehicles passing through the gatehouse or weighing station prior to unloading. The panel further determined that the purpose of the rules and regulations was to collect the appropriate fees for dumping, and that to bypass the rules and regulations meant the possible loss of revenue to the plaintiff.

The panel concluded that because Rodriguez chose to dump materials during the weekend, a time period when the facility was closed for dumping and when there was no supervisor present, Rodriguez probably knew that the practice of dumping without a permit was not allowed. The panel concluded, however, that there was no evidence that Rodriquez knew that his misconduct was of the sort that could subject him to the termination of his employment. Finally, the panel concluded that the plaintiff's claim that it did not know what materials were dumped by Rodriguez was less than accurate because during its investigation, the plaintiff discovered what type of materials Rodriguez had dumped, and the plaintiff failed to show how the material that was dumped would potentially cause it to lose its contract with CRRA. Although the panel was unanimous in its decision that Rodriguez' misconduct warranted some form of discipline because his actions had led to other employees being disciplined, the panel also unanimously agreed that Rodriguez' misconduct was not so egregious that it warranted the termination of his employment. Consequently, in its award, the panel reduced the termination to a two week suspension without pay.

The plaintiff applied to the trial court to vacate the arbitration award, claiming that given the undisputed facts and evidence, an award that ordered anything less than full termination of employment violated public policy. It argued that Rodriguez knew the rules regard-

ing the dumping of waste at the plaintiff's facility, that he admitted that he violated those rules and that his conduct was, therefore, in direct contravention of state laws and policy regarding the dumping of solid waste. The defendants filed an objection to the motion to vacate in which they argued that the plaintiff had failed to identify any explicit, well defined and dominant public policy that would be violated by the award. Thereafter, the plaintiff filed a reply brief in support of its application to vacate the arbitration award. In its brief, the plaintiff argued that the award reinstating Rodriguez violated at least two explicit mandates of public policy, namely: (1) the public policy of protecting the environment to enhance the health, safety and welfare of the people of the state, as set forth in General Statutes §§ 22a-1 and 22a-15, and (2) the public policy against requiring an employer to reinstate an employee who has admitted to committing what amounts to embezzlement, as set forth in *Groton* v. *United Steelworkers of America*, 254 Conn. 35, 48, 757 A.2d 501 (2000).

The court granted the plaintiff's application to vacate the arbitration award. It concluded that Connecticut has a comprehensive scheme for solid waste management, as found in General Statutes § 22a-207 et seq., the Solid Waste Management Act, and that Rodriguez' actions violated that policy. The court also concluded that Rodriguez' actions deprived the plaintiff of revenue and, therefore, his conduct was analogous to the conduct of the employee in *Groton* v. *United Steelworkers of America*, supra, 254 Conn. 35, in which our Supreme Court held that "the public policy against embezzlement encompasses the policy that an employer should not be compelled to reinstate an employee who has been convicted of embezzling the employer's funds, irrespective of whether the conviction followed a trial, a guilty plea or a nolo contendere plea." Id., 48. The defendants filed a motion for reargument and reconsideration,

which the court granted. After hearing reargument, the court declined to change its decision. This appeal followed.

I

The defendants claim that the court improperly vacated the arbitration award as violative of public policy because the plaintiff failed to demonstrate the existence of any explicit, well defined and dominant public policy that would be violated by an award reinstating Rodriguez. We agree.

We begin our analysis of the defendants' claim by setting forth the general rule regarding arbitration awards. "The standard of review relative to arbitration awards depends on the nature of the challenge. With a voluntary, unrestricted submission to an arbitrator, as is the case before us,[3] the court may only examine the submission and the award to determine whether the award conforms to the submission. . . . In making such a comparison when the submission is unrestricted, the court will not review the evidence or legal questions involved, but is bound by the arbitrator's legal and factual determinations. . . .

"Certain conditions do exist, however, under which we conduct a more searching review of arbitral awards. In *Garrity* v. *McCaskey*, 223 Conn. 1, 6, 612 A.2d 742 (1992), our Supreme Court reiterated that there are three grounds for vacating an award when the submission is unrestricted. These grounds arise when the award (1) rules on the constitutionality of a statute, (2) violates clear public policy or (3) contravenes one or more of the statutory proscriptions of General Statutes § 52-418." (Citations omitted; internal quotation marks omitted.) *State* v. *AFSCME, Council 4, Local 2663,*

---

[3] In the present case, the parties did not dispute that the submission was unrestricted.

*AFL-CIO,* 59 Conn. App. 793, 796, 758 A.2d 387, cert. denied, 255 Conn. 905, 762 A.2d 910 (2000). In the present case, the defendants' challenge implicates only the second exception; accordingly, it will be the focus of our discussion.

In *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.,* 252 Conn. 416, 747 A.2d 1017 (2000), our Supreme Court enunciated the proper standard of review for determining whether an arbitral decision violates a clear public policy. It stated: "Where there is no clearly established public policy against which to measure the propriety of the arbitrator's award, there is no public policy ground for vacatur. If, on the other hand, it has been determined that an arbitral award does implicate a clearly established public policy, the ultimate question remains as to whether the award itself comports with that policy. We conclude that where a party challenges a consensual arbitral award on the ground that it violates public policy, and where that challenge has a legitimate, colorable basis, de novo review of the award is appropriate in order to determine whether the award does in fact violate public policy." Id., 429.

"Recently, this court had the opportunity to clarify the standard annunciated in *Schoonmaker.* In *State* v. *AFSCME, Council 4, Local 2663, AFL-CIO,* supra, 59 Conn. App. 797, we held that *Schoonmaker* require[s] a two-step analysis in cases such as this one in which a party raises the issue of a violation of public policy in an arbitral award. First, we must determine whether a clear public policy can be identified. Second, if a clear public policy can be identified, we must then address the ultimate question of whether the award itself conforms with that policy." (Internal quotation marks omitted.) *Cheverie* v. *Ashcraft & Gerel,* 65 Conn. App. 425, 432, 783 A.2d 474, cert. denied, 258 Conn. 932, 785 A.2d 228 (2001). The court in the present case relied on

two separate public policy bases. We must, therefore, determine whether either of the public policy bases relied on by the court for vacating the arbitration award satisfied that two step analysis.

### A

First, the court concluded that Connecticut has a public policy regarding solid waste management, as found in § 22a-207 et seq., and that Rodriguez had violated that public policy.

We agree that § 22a-207 et seq. sets forth an explicit and well defined public policy regarding the disposal and reduction of solid waste. See, e.g., *City Recycling, Inc.* v. *State*, 247 Conn. 751, 755, 725 A.2d 937 (1999). The award in the present case implicates that public policy because Rodriguez was reinstated to employment at the plaintiff's facility, which must comply with the solid waste management act. Accordingly, the plaintiff has succeeded in identifying a clearly established public policy against which to measure the propriety of the arbitration award.

Because the plaintiff has identified a clear public policy, we must, therefore, address the ultimate question of whether the plaintiff demonstrated that the arbitration award of reinstatement clearly violated that public policy because "[t]he public policy exception applies only when the award is *clearly illegal or clearly violative of a strong public policy*." (Emphasis added; internal quotation marks omitted.) *Groton* v. *United Steelworkers of America*, supra, 254 Conn. 45. The court seemed to conclude that the plaintiff had met its burden of showing that the award clearly violated that public policy because Rodriguez admitted at the disciplinary hearing that he had "dumped unidentified material, escorted a truck onto the property, and breached rules and procedures designed to safeguard the public and the facility." We disagree.

Although, as the court noted, Rodriguez admitted at the disciplinary hearing that he had dumped unidentified material, the arbitration panel expressly found that the materials that Rodriguez dumped were not "unidentified."[4] The panel further found that the plaintiff had conducted an investigation into the dumping incident and, on the basis of its investigation, learned what type of materials Rodriguez had dumped and that the plaintiff failed to show how those materials would potentially cause it to lose its contract with CRRA. From those findings, it is reasonable to infer that if the material that Rodriguez dumped was material that the plaintiff was prohibited by CRRA from accepting at its facility or the solid waste management act, the plaintiff would have offered evidence of that fact at the arbitration hearing.

Additionally, as the court noted, Rodriguez also admitted at the disciplinary hearing that he had violated rules and procedures designed to safeguard the public and the facility. The panel found that the rules that were posted at the facility by the plaintiff applied to how vehicles should be processed through the weigh stations and how the appropriate fees were to be collected. The plaintiff, however, failed to demonstrate that the rules and procedures that Rodriguez breached were anything other than the internal rules and procedures of the plaintiff. Internal "directives are not in and of themselves determinative of public policy. Internal practices and procedures may reflect public policy but those practices and procedures do not determine that policy." (Internal quotation marks omitted.) *State* v. *AFSCME, Council 4, Local 387, AFL-CIO*, 252 Conn. 467, 476 n.10, 747 A.2d 480 (2000). Finally, although Rodriguez dumped waste without a permit on a Sunday afternoon in violation of CRRA regulations, the plaintiff

---

[4] The record reveals that Rodriguez dumped cut brush, a material that the plaintiff was not prohibited from accepting at its facility.

failed to articulate, or even allege, that those regulations reflected the public policy encapsulated in the solid waste management act.

This court's role "in addressing a public policy challenge has been confined largely to determining whether, as gleaned from a statute, administrative decision or case law, there exists a public policy mandate with which an arbitral award must conform." *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, supra, 252 Conn. 428. In the present case, the court determined that there is a public policy regarding solid waste disposal as gleaned from a statutory scheme, the solid waste management act. The plaintiff failed, however, to cite any particular provisions of the solid waste management act that Rodriguez had violated. Furthermore, it failed to cite the particular provisions of the act that would be violated by reinstating Rodriquez to his previous position. In fact, in its application to vacate the award, the plaintiff set forth only a very general claim that Rodriguez' conduct was in direct contravention of state law and policy regarding solid waste disposal; it did not even cite the statutory scheme regarding solid waste management that was relied on by the court in vacating the award. Instead, the plaintiff relied on §§ 22a-1 and 22a-15 for its claim that the award violated this state's public policy of protecting the environment to enhance the health, safety and welfare of the people of this state.[5]

On the basis of the foregoing, we conclude that the plaintiff failed to meet its burden of demonstrating that

---

[5] General Statutes § 22a-1 provides in relevant part that "the policy of the state of Connecticut is to conserve, improve and protect its natural resources and environment and to control air, land and water pollution in order to enhance the health, safety and welfare of the people of the state. . . ."

General Statutes § 22a-15 provides in relevant part that "there is a public trust in the air, water and other natural resources of the state of Connecticut and that each person is entitled to the protection, preservation and enhancement of the same. . . ."

the arbitration award reinstating Rodriguez clearly violated the public policy set forth in the solid waste management act and, therefore, that the court improperly vacated the arbitration award on that basis.

B

Second, the court concluded, in reliance on *Groton* v. *United Steelworkers of America*, supra, 254 Conn. 35, that the arbitration award reinstating Rodriguez violated the clear public policy against requiring employers to reinstate employees who have embezzled from them. The defendants claim that the court improperly vacated the arbitration award as violative of the public policy set forth in *Groton*. In making that determination, we must, again, employ the two step analysis that we set forth in *State* v. *AFSCME, Council 4, Local 2663, AFL-CIO*, supra, 59 Conn. App. 797, namely, we must first determine whether a clear public policy can be identified and, if so, we must then address whether the award conflicts with that policy.

We conclude that the plaintiff has failed to meet its burden of identifying a clear public policy because it has failed to demonstrate how the policy set forth in *Groton* was implicated in this case. The narrow issue in *Groton* v. *United Steelworkers of America*, supra, 254 Conn. 35, was "whether an arbitral award, which reinstated to employment an employee who had been convicted of embezzlement of his employer's funds following a plea of nolo contendere, violates public policy." Id., 36. In that case, the employee had worked for the town as a weighmaster at the town landfill. Id., 37. His duties included selling landfill permits to residents. Id. He was responsible for accounting for the permits and for turning over the money he received from sales to the town. Id. The employee was charged by the Groton police with two counts of larceny by embezzlement and one count of violating a town ordinance. Id., 37–38.

Those charges arose out of allegations that the employee had sold permits and kept the proceeds of those sales for himself. Id., 38. As part of a plea agreement, the state agreed to drop one of the larceny counts and the municipal ordinance count in exchange for the employee's plea of nolo contendere to the remaining larceny count. Id. The employee accepted the plea agreement. Id. The town discharged the employee on the basis of his larceny conviction. Id.

Thereafter, the defendant union filed a grievance on the employee's behalf, challenging the termination of his employment. Id., 39. The grievance was ultimately submitted to arbitration. Id. The arbitrator determined that the conviction did not establish just cause for termination. Id., 41. The town applied to the trial court to vacate the award. Id., 43. The court rendered judgment vacating the award. Id. The defendants appealed, arguing that the court improperly applied the public policy exception to the general rule of deference regarding arbitrator's awards because the employee's conviction was based on a plea of nolo contendere and therefore that the conviction could not be used to establish that he had, in fact, embezzled from his employer or be given any other effect. Id. Our Supreme Court disagreed. It concluded that the award reinstating the employee "violated the clear public policy against embezzlement, and that this policy encompasses the policy that an employer may not be required to reinstate the employment of one who has been *convicted* of embezzlement of his employer's funds, whether that *conviction* follows a trial, a guilty plea, or a plea of nolo contendere." (Emphasis added.) Id., 46–47.

In the present case, Rodriguez was neither charged with nor convicted of embezzlement or any other crime. Furthermore, there was no finding by the arbitration panel that Rodriguez admitted that he committed theft.

Instead, he admitted to breaking rules, which meant the *possible* loss of revenues to the plaintiff.

Even if we assume arguendo that the plaintiff has successfully demonstrated that the public policy set forth in *Groton* was implicated, we would conclude that the plaintiff has failed to demonstrate how the arbitration award reinstating Rodriguez clearly violates that public policy. We conclude that *Groton* is distinguishable from the present case. In *Groton*, the employee was charged and convicted of a crime. Here, Rodriguez was neither charged with nor convicted of embezzlement or any other crime.[6]

Furthermore, a factor that figured prominently in our Supreme Court's determination that reinstatement of the employee in *Groton* was repugnant to public policy was the fact that the employee in the *Groton* case held a position of financial trust. Id., 48. The court concluded that requiring the employer to reinstate that employee to such a position undermined the legitimate expectations of the employer, namely, that an employer is entitled to expect that it should be able to trust an employee in a position of financial responsibility and that an employer also is entitled to expect that other employees and members of the public will feel that they can trust that employee. Id., 48–49. In the present case, there is no indication as to the nature of the position held by Rodriguez. Moreover, the cases that have held that a court properly vacated an arbitration award that compelled reinstatement of an employee usually involved some apparent and egregious misconduct on the part of the employee. See id., 35 (employee arrested and

---

[6] By means of our analysis, we do not imply that Rodriguez' conduct constituted embezzlement. See General Statutes § 53a-119; see also *State* v. *Lizzi*, 199 Conn. 462, 467, 508 A.2d 16 (1986) ("crime of embezzlement is consummated where . . . the defendant, by virtue of his agency or other confidential relationship, has been entrusted with the property of another and wrongfully converts it to his own use").

convicted of larceny of employer's funds); *State* v. *AFSCME, Council 4, Local 387, AFL-CIO*, supra, 252 Conn. 467 (employee arrested for making harassing telephone calls on state telephone during working hours granted accelerated rehabilitation); *State* v. *AFSCME, Council 4, Local 2663, AFL-CIO*, supra, 59 Conn. App. 793 (employee, who was driver for department of children and families, arrested and convicted of possession of marijuana, cocaine with intent to sell); *Board of Education* v. *Local 566, Council 4, AFSCME*, 43 Conn. App. 499, 683 A.2d 1036 (1996) (employee convicted of embezzling union funds demoted to position where he would not be responsible for publicly owned property), cert. denied, 239 Conn. 957, 688 A.2d 327 (1997); *State* v. *Council 4, AFSCME*, 27 Conn. App. 635, 608 A.2d 718 (1992) (employee arrested for stealing state funds granted accelerated rehabilitation). We conclude that the misconduct at issue in this case did not rise to that level. Accordingly, the court improperly vacated the arbitration award on the ground that it violated the public policy set forth in *Groton*.

The judgment is reversed and the case is remanded with direction to deny the plaintiff's application to vacate the arbitration award.

In this opinion the other judges concurred.