## JOHN BRANTLEY *v.* CITY OF NEW HAVEN ET AL.

## CITY OF NEW HAVEN *v.* IAFF LOCAL 825
### (AC 27255)

Bishop, Rogers and Hennessy, Js.

Argued November 15, 2006—officially released May 1, 2007

*Jerald S. Barber*, for the appellant (plaintiff in the first case, plaintiff intervenor in the second case).

*Audrey C. Kramer*, assistant corporation counsel, for the appellee (named defendant in the first case, named plaintiff in the second case).

*Opinion*

ROGERS, J. The plaintiff, John Brantley, appeals from the judgments of the trial court vacating, in its entirety, an award of the department of labor board of mediation and arbitration (board) that reinstated his employment with the defendant city of New Haven (city) and imposed an eight month unpaid suspension in lieu of the termination of his employment.[1] The plaintiff claims

[1] This is a joint appeal arising from two related matters. The first matter, docketed as NNH-CV-03-0474614-S, was brought by Brantley against the city and the board. The board is not a party to this appeal.

The second matter, docketed as NNH-CV-03-0474877-S, was brought by the city against Brantley's union, IAFF Local 825 (union). Brantley then was permitted to intervene as a party plaintiff. Brantley sought to vacate the suspension portion of the award. The city sought to vacate the entire award. The union is not a party to this appeal.

The cases were considered together, and the court denied Brantley's application in the first case and granted the city's application in the second case. For clarity, we refer in this opinion to Brantley as the plaintiff and the city as the defendant.

that the court (1) improperly vacated the award in its entirety on the basis of its being contrary to public policy and (2) should have vacated the arbitration award only to the extent that it imposed an eight month suspension because that portion of the award was not responsive to the submission.[2] We agree with the plaintiff's first claim and disagree with the second. Accordingly, we reverse in part and affirm in part the judgments of the trial court.

The arbitration award includes the following factual findings, which the parties do not dispute. The plaintiff was employed as a firefighter for the city's department of fire service (department) since 1983. Prior to the events underlying this appeal, he had been disciplined only once for a minor matter. The plaintiff received various promotions over the course of his employment, and most recently served as director of community relations and public fire education. In his own words, he has been "an outspoken critic of not just the city but of the department . . . ." (Internal quotation marks omitted.)

On January 18, 2002, the plaintiff communicated to a colleague, Lieutenant Sheryl Broadnax, his intent to contact a particular firefighter for assistance in responding to a community group's request for a fire safety presentation. In the course of that conversation, Broadnax indicated that the contact information the plaintiff possessed for that firefighter was not current. The plaintiff then told Broadnax that he wanted to update his department database, which was a computer

---

[2] The plaintiff also claims that the court improperly failed to conclude that he was prejudiced by the board's consideration of certain evidence, but he has not set forth a distinct argument concerning this claim. Like the plaintiff, we treat this issue as subsumed within his claim that the award was not responsive to the submission.

file the plaintiff maintained in his office. That file contained the name, age, social security number and telephone number of each member of the department. Some of the telephone numbers were unlisted.

The plaintiff and Broadnax then went to the office of their deputy chief. In the presence of Captain Thomas Quinn, who was acting as deputy chief,[3] the plaintiff downloaded a copy of the master database from the deputy chief's computer to a floppy disk. He then left with the disk.

Quinn reported the incident to the deputy chief, who considered it a direct violation of the city's computer hardware and software policy (city policy) and recommended that the accessed computer be password protected and that the door to the office housing the computer be locked. The president of the plaintiff's union also learned of the alleged security breach and filed a formal complaint with the department. An investigation ensued, and it was discovered that the plaintiff, after downloading the database, had copied it on to both Broadnax' computer and the plaintiff's personal computer at home. There was no indication that the plaintiff otherwise did anything improper with the information in the database.

On February 25, 2002, the plaintiff appeared at a special meeting of the board of fire commissioners (commissioners) to answer to a number of charges, including an allegation that he had violated the department's General Order #19.[4] That order provides, in rele-

---

[3] At the time, the actual deputy chief was overseeing a two alarm fire.

[4] The plaintiff also was charged with the following: "Violation of [the] Rules and Regulations of the Department of Fire Service, Section 16 (a)—To be guilty of deception of any law, rule, regulation or order.

"Violation of the Rules and Regulations of the Department of Fire Service, Section 16 (f)—To neglect or refuse to obey the authorized orders of a superior officer.

"Violation of the Rules and Regulations of the Department of Fire Service, Section 16 (h)—To be guilty of conduct in any manner prejudicial to the good name and reputation of the Department.

vant part: "Unauthorized access to any personal or medical information relative to Department members which is contained within Department files and/or computer system is strictly prohibited. Requests for review of such documents must be authorized, in writing, by the Office of the Chief. Any unauthorized review or access to such documentation will be dealt with through appropriate discipline."[5] Subsequent to the special meeting, the plaintiff was discharged from his position. The record is silent as to what rules and regulations the commissioners found the plaintiff to have violated or precisely what behavior of the plaintiff formed the basis of any violation.

The plaintiff filed a grievance to protest the termination of his employment. After the parties failed to resolve the grievance using contractual procedures, the matter was claimed for arbitration. An arbitration hearing was held before the board on July 18, 2002.

At the hearing, it was adduced that the same or similar information as that accessed and copied by the plaintiff was available on index cards in each firehouse and also via computer at a training center. Another employee testified as to accessing the information without written authorization and indicated a lack of awareness that such was impermissible. The plaintiff similarly testified that he did not have written authorization, but thought that it was unnecessary because he needed the information to do his job and, moreover, he considered himself

---

"Violation of the Rules and Regulations of the Department of Fire Service, Section 16 (k)—Untruthfulness or willful misrepresentation in matters affecting the Department . . . employees." (Internal quotation marks omitted.)

The charged violations were alleged to have occurred on January 18 and 25, 2002.

[5] In addition, pursuant to the city policy, violators thereof "shall be subject to appropriate disciplinary actions including but not limited to warnings, suspensions or termination."

part of the staff that did not need written authorization.[6] No witness could identify any instance of a written authorization being issued.

The board concluded that the defendant had not shown just cause for terminating the plaintiff's employment.[7] It found that the rule disallowing unauthorized access to employees' personal information was articulated in both General Order #19 and the city policy,[8] that those documents had been reasonably well circulated and that the plaintiff did not claim ignorance of them. The board recognized, however, that it was unclear whether the policies were applicable to an employee in the plaintiff's position. See footnote 7. It found nevertheless that the plaintiff "had absolutely no right nor authority either, particularly, to download the [database] on [to] his home computer nor to give it to . . . Broadnax."

The board acknowledged that the information accessed, copied and shared by the plaintiff was sensitive and that if it were used wrongfully, great damage potentially could result. It considered further the department's ambivalent attitude toward the confidentiality of that information and suggested that the plaintiff's termination was politically motivated. Moreover, it emphasized the plaintiff's nineteen years of nearly fault free service and his ascension to a position of responsibility that involved educating the public.

---

[6] The requirement of written authorization for accessing personal information apparently was waived for members of the chief's office. According to the plaintiff, the prior chief had considered him part of that office and no change in status had ever been conveyed to him. The board ultimately did not make a finding in this regard, but characterizes the issue as an unanswered question.

[7] Pursuant to the contract governing the plaintiff's employment, "[n]o permanent employee shall be removed, discharged, suspended, fined, reduced in rank or disciplined in any manner except for just cause."

[8] We note that the full city policy is not part of the record, nor is there any indication that the plaintiff was formally charged with violating it.

The board allowed that in the "proper case," wrongful use of confidential employee information could justify termination of employment. It reasoned, however, that "[j]ust cause . . . demands more than merely the potential for grave consequences." Weighing the foregoing considerations and affording particular weight to the plaintiff's favorable work history, the board rendered an award sustaining his grievance, in part, by setting aside the termination of his employment. In lieu of the termination, however, it substituted an eight month, unpaid suspension.

On February 26, 2003, the plaintiff applied to the court to vacate the board's award to the extent that it imposed a suspension. On February 28, 2003, the defendant applied to the court to vacate the board's award in its entirety and to reinstate the termination of the plaintiff's employment as imposed by the commissioners.[9] In a single memorandum of decision filed January 25, 2005, the court granted the defendant's application and denied the plaintiff's application. According to the court, the plaintiff's actions implicated a well defined and dominant public policy, and the board's award reinstating him thus violated public policy.[10] This appeal followed. Additional facts will be provided where relevant to the issues.

I

The plaintiff claims first that the court improperly vacated the board's award, in its entirety, on the ground that it violated public policy. He argues that the conduct for which he was disciplined was isolated and not egregious and that the defendant therefore failed to establish that the award reinstating him clearly was violative of an explicit public policy. We agree.

---

[9] The parties' applications were filed under separate docket numbers and never were formally consolidated.

[10] The court's memorandum of decision cites only one case in support of this general proposition and otherwise, is bereft of analysis.

Connecticut's courts have recognized a public policy exception to the general rule of judicial deference to an arbitration award rendered pursuant to a voluntary submission.[11] *Garrity* v. *McCaskey*, 223 Conn. 1, 6, 612 A.2d 742 (1992). That exception applies, however, "only when the award is clearly illegal or clearly violative of a strong public policy. . . . A challenge that an award is in contravention of public policy is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them." (Citation omitted; internal quotation marks omitted.) *Groton* v. *United Steelworkers of America*, 254 Conn. 35, 45–46, 757 A.2d 501 (2000).

To prevent the public policy exception from swallowing the general rule of judicial deference to arbitral authority, the exception must be narrowly construed. Accordingly, "[a] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. . . . The party challenging the award bears the burden of proving that illegality or conflict with public policy is *clearly demonstrated*. . . . Therefore, given the narrow scope of the public policy limitation on arbitral authority, the plaintiff can prevail . . . only if [he] demonstrates that the [board's] award *clearly violates* an established public policy mandate." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 46. The court concluded that the defendant had established such a clear violation. Our

---

[11] Additionally, an arbitration award may be vacated for any of the reasons enumerated in General Statutes § 52-418.

review of that conclusion is plenary. *LaSalla* v. *Doctor's Associates, Inc.*, 278 Conn. 578, 586, 898 A.2d 803 (2006).

The defendant argues that the board's award reinstating the plaintiff's employment and instead imposing an unpaid suspension is offensive to the public policy underlying General Statutes § 53a-251, a provision governing computer crime. Pursuant to that statute, "[a] person is guilty of the computer crime of unauthorized access to a computer system when, *knowing that he is not authorized to do so,* he accesses . . . any computer system without authorization." (Emphasis added.) General Statutes § 53a-251 (b) (1). The statute provides further, in relevant part, that "[i]t shall be an affirmative defense to a prosecution for unauthorized access to a computer system that: (A) The person reasonably believed that the owner of the computer system, or a person empowered to license access thereto, had authorized him to access . . . ." General Statutes § 53a-251 (b) (2).

We agree that § 53a-251 (b) evinces a well defined public policy disallowing *knowingly* unauthorized access to computer systems, but disagree that the board's award is in clear conflict with that policy. The statute exempts from the definition of illegal conduct access that is improper, but undertaken with a reasonable belief that it is authorized. It is undisputed that the plaintiff was not charged with a violation of § 53a-251 (b) (1), and the board explicitly found credible the plaintiff's testimony that he believed he personally was authorized to access the database, despite his awareness of General Order #19. It further found that the department was lax about securing the database and enforcing the policy requirement of written authorization, which indicates that the plaintiff's belief was not unreasonable. Even in the context of de novo review, we defer to the arbitrators' factual determinations. *Groton* v. *United Steelworkers of America,* supra, 254 Conn.

52. Given the foregoing, we are not convinced that an award reinstating the plaintiff after an eight month unpaid suspension clearly violates the public policy underlying § 53a-251 (b) (1), which by its terms is directed at punishing those who access computers while *knowing* they lack authorization. See *Metropolitan District Commission* v. *Local 184*, 77 Conn. App. 832, 825 A.2d 218 (2003) (award reinstating employee not violative of public policy where employee's actions underlying termination, although contrary to employer's internal rules, did not offend public policy encapsulated in pertinent statute); see also id., 844–45 (reinstatement proper where employee neither charged with nor convicted of crime and actions not found by arbitrator to have caused actual harm).

Our conclusion is reinforced by our review of other cases applying the public policy exception. "[T]he cases that have held that a court properly vacated an arbitration award that compelled reinstatement of an employee usually involved some apparent and egregious misconduct on the part of the employee." Id., 845; see, e.g., *Groton* v. *United Steelworkers of America,* supra, 254 Conn. 35 (employee arrested and convicted of larceny of employer's funds); *State* v. *AFSCME, Council 4, Local 387, AFL-CIO*, 252 Conn. 467, 747 A.2d 480 (2000)[12] (employee arrested for making obscene, racist telephone call to state legislator on state telephone during working hours); *State* v. *AFSCME, Council 4, Local 2663, AFL-CIO*, 59 Conn. App. 793, 758 A.2d 387 (employee, who was driver for department of children and families, arrested and convicted of possession of marijuana and cocaine with intent to sell), cert. denied, 255 Conn. 905, 762 A.2d 910

---

[12] We note that this is the case cited by the trial court as support for vacating the board's award. See footnote 10. We consider it, to the contrary, to be readily distinguishable on its facts.

(2000); *South Windsor* v. *South Windsor Police Union*, 41 Conn. App. 649, 677 A.2d 464 (police officer deliberately revealed identity of confidential informant), cert. denied, 239 Conn. 926, 683 A.2d 22 (1996).

We recognize the potential damage that can result from misuse of personal information and emphasize that we do not condone the type of conduct underlying the plaintiff's discipline. Nevertheless, we cannot conclude that that conduct, when viewed in the context of the plaintiff's entire career and in light of the department's inconsistent enforcement of its security policy and the lack of clarity in regard to whom that policy applied, is so egregious that it requires nothing less than termination of the plaintiff's employment so as not to violate public policy. The court's vacation of the board's award thus was improper.

## II

The plaintiff claims further that the court should have vacated the board's award to the extent that it imposed a suspension because that part of the award was not responsive to the submission. We disagree.

The following additional facts are relevant. Pursuant to the contract governing the plaintiff's employment, unresolved grievances may be submitted to the board for arbitration, and the board's decision, if not contrary to law, "shall be final and binding upon both parties . . . ." The contract provides further that if the city and the union "mutually agree in writing as to the statement of the matter to be arbitrated . . . the [board] shall confine [its] decision to the particular matter which was specified." Here, the issues submitted to the board were as follows: "Did the Board of Fire Commissioners have just cause to terminate [the plaintiff] on February 25, 2002? If not, what shall the remedy be?" As previously indicated, the board answered the first

question in the negative and as to the second, imposed an eight month, unpaid suspension.

The principles governing a party's application to vacate a consensual arbitration award resulting from an unrestricted submission[13] are well established. "Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling . . . disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . .

"Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact." (Internal quotation marks omitted.) *Economos* v. *Liljedahl Bros., Inc.*, 279 Conn. 300, 305, 901 A.2d 1198 (2006). "Furthermore, in applying this general rule of deference to an arbitrator's award, [e]very reasonable

---

[13] The parties agree that the submission was unrestricted.

presumption and intendment will be made in favor of the [arbitral] award and of the arbitrators' acts and proceedings." (Internal quotation marks omitted.) *Groton* v. *United Steelworkers of America,* supra, 254 Conn. 44.

The plaintiff cites subsection (a) (4) of General Statutes § 52-418 in support of his claim. That subsection provides in relevant part that "an award is invalid if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. Generally, any challenge to an award pursuant to [this subsection] on the ground that the arbitrators exceeded or imperfectly performed their powers is properly limited to a comparison of the award with the submission. . . . If the award conforms to the submission, the arbitrators have not exceeded their powers." (Internal quotation marks omitted.) *Exley* v. *Connecticut Yankee Greyhound Racing,* 59 Conn. App. 224, 228, 755 A.2d 990, cert. denied, 254 Conn. 939, 761 A.2d 760 (2000).

The plaintiff argues that the court should have vacated the portion of the board's award imposing an eight month suspension because, in essence, the suspension was imposed for misconduct that was not charged by the commissioners and, therefore, did not underlie the termination that the board, pursuant to the submission, was authorized to review for just cause. According to the plaintiff, he was charged with violating General Order #19 solely for accessing the database without authorization, and it was this alleged transgression that formed the basis of the termination of his employment. He notes in this regard that the board did not find that he violated General Order #19 in the foregoing manner. See footnote 7. The plaintiff claims, therefore, that the board's award imposing a suspension was not responsive to the submission because it was based on different, uncharged misconduct that was not

contrary to General Order #19, i.e., his copying of the employee database to his home computer and sharing it with Broadnax. We are not convinced.

First, it is not apparent that the factual premise of the plaintiff's argument is accurate. There is nothing in the record to show precisely which directives the commissioners found the plaintiff to have violated and exactly what conduct constituted the violations. As the board found, an investigation conducted prior to the termination of the plaintiff's employment revealed that he had copied the database to his home computer and also to Broadnax' computer. It is entirely possible, therefore, that the commissioners concluded that this conduct, as well as the initial accessing of the database, violated one or more department directives and justified the termination of employment. Regardless of whether this is so, on the incomplete record before us, we cannot assume that the board's award imposed a suspension on the basis of different, uncharged misconduct.

Second, even if the basis of the board's suspension differed from that of the termination of employment as imposed by the commissioners, that circumstance would not render the award nonresponsive to the submission as it was framed by the parties. Specifically, the submission did not limit the board to considering whether any particular action of the plaintiff justified termination of his employment because it violated a specific rule, but rather, directed it to determine generally whether "just cause" existed to terminate the plaintiff's employment and, if not, what remedy was appropriate. Compare *Groton* v. *United Steelworkers of America*, supra, 254 Conn. 40 (issue submitted to arbitrator framed as "[w]hether the [plaintiff] had just cause under article XVIII of the collective bargaining agreement in terminating [the union member's employment] for the following reasons: (1) his conviction of a crime arising out of his employment" [internal quotation

marks omitted]). Accordingly, the award was wholly authorized by the submission and cannot be disturbed.

For many years, Connecticut's courts have "wholeheartedly endorsed arbitration as an effective alternative method of settling disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation. . . . When arbitration is created by contract, we recognize that its autonomy can only be preserved by minimal intervention. . . . Because the parties themselves, by virtue of the submission, frame the issues to be resolved and define the scope of the [arbitrators'] powers, the parties are generally bound by the resulting award." (Internal quotation marks omitted.) *Bridgeport* v. *Kasper Group, Inc.*, 278 Conn. 466, 473–74, 899 A.2d 523 (2006). "[A] party cannot object to an award which accomplishes precisely what the arbitrators were authorized to do merely because that party dislikes the results." (Internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 258 Conn. 101, 110, 779 A.2d 737 (2001). The plaintiff agreed to submit the issue of the proper remedy for his overall conduct to the board for determination, and he is bound to accept the outcome.

The judgment in the second case is reversed and the case is remanded with direction to render judgment denying the city of New Haven's application to vacate. The judgment in the first case is affirmed.

In this opinion the other judges concurred.